ELIZABETH P. PARMLY, petitioner-respondent,

*v.*

J. FRANK PARMLY, defendant-appellant.

[Submitted February term, 1939.   Decided April 21st, 1939.]

Mr. *Otto A. Stiefel* (*Mr. Ward Kremer,* of counsel), for the appellant.

*Messrs. Smith & Slingerland* (*Mr. Frederic W. Smith* and *Mr. Elmer F. Holtz,* of counsel), for the respondent.

The opinion of the court was delivered by

HEHER, J.

The modified decree *nisi* reveals judicial sanction of an agreement between the parties for the payment of a gross sum "in lieu of alimony and maintenance both now and at all times in the future;" and the primary subject of inquiry is whether this serves to deprive the court of chancery of jurisdiction presently to award alimony, even though the divorced wife be in necessitous circumstances.

For the resolution of this question, recourse must be had to the statute and the interpretative adjudications. The authorities elsewhere afford no aid in the ascertainment of our legislative policy.

The jurisdiction of chancery to award permanent alimony as an incident to a decree of divorce *a vinculo matrimonii* in the wife's favor is statutory in origin. Under the common law, divorce jurisdiction was vested in the ecclesiastical courts, and was limited to divorce *a mensa et thoro,* unless the marriage was void *ab initio.* Alimony was not allowable in the latter class of cases, for there was no marriage out of which the duty of maintenance arose. By the same token, alimony was considered an incident of a divorce *a mensa et thoro,* for such a decree did not dissolve the marriage bond. See *Lynde* v. *Lynde, 64 N. J. Eq. 736, 750.*

Our statute follows: "Pending a suit for divorce or nullity, or after decree of divorce, the court of chancery may make such order touching the alimony of the wife, and also touching the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, * * *." *R. S. 1937, 2:50-37.* From early times this jurisdiction has been conferred in substantially similar language. *Nixon's Digest (2d ed.) 206 § 9; Rev. Stat. 1877, 317, § 19.*

This enactment has been construed as investing chancery with a continuing jurisdiction after a divorce *a vinculo,* not subject to the control of the parties, as regards both alimony and the care, custody, education, and maintenance of the children of the marriage. The statute imposes upon the husband, in the event of a decree of absolute divorce in the wife's favor, a continuing obligation of support, notwithstanding the severance of the marriage tie; and the enforcement of the obligation is committed to the sound discretion of the court of chancery, guided by the statutory standard, *i. e.,* what in the special circumstances is "fit, reasonable and just."

The continuing duty of support thus imposed is grounded in a public policy designed to make for permanence in the marriage relation, as well as to accord a measure of protection to the innocent wife. The legislature has deemed it to be contrary to the public interest to permit the guilty husband, whose willful misconduct has brought about a dissolution of the marriage, to also cast off the duty of support arising from the marriage status. See *Sidney* v. *Sidney, 4 Swab. & T. 178; Lynde* v. *Lynde, supra* (at *p. 751*); *Sobel* v. *Sobel, 99 N. J. Eq. 376.*

And it has long been settled in this state that the legislature employed the word "alimony" in its original technical sense of "money payments of the character of an annuity," and therefore it is not within the competency of the court of chancery to make the award in a gross sum. *Calame* v. *Calame, 25 N. J. Eq. 548.* In that case Chief-Justice Beasley pointed out that a like provision had been "on the statute books for over fifty years," and had "never before received this interpretation." The ecclesiastical courts invariably, so

far as our research discloses, awarded alimony in periodic installments, and reserved authority to vary the amount from time to time as warranted by the particular circumstances. While the award in such cases was predicated upon a continuance rather than a dissolution of the marriage bond, our statute granting jurisdiction to make alimony awards in the latter class of cases is so phrased as plainly to indicate the use of the term "alimony" in its technical connotation. The design was to provide for periodical payments, subject to revision in accordance with a subsequent change of circumstances. Thus the power is essentially a continuing one.

It is a corollary of the foregoing that the injured wife may not bargain away chancery's jurisdiction to provide for and regulate the *quantum* of alimony from time to time in accordance with her necessities. This doctrine is embedded in our jurisprudence. *Hires* v. *Hires, 91 N. J. Eq. 366; affirmed, 92 N. J. Eq. 451; Irwin* v. *Irwin, 98 N. J. Eq. 454; affirmed, 100 N. J. Eq. 347.* In the last cited case, this court adopted without qualification the following declaration by Vice-Chancellor Leaming: "In *Hires* v. *Hires, 91 N. J. Eq. 366; affirmed, 92 N. J. Eq. 451,* adjudications are reviewed which disclose that, while such agreements may be enforced against the husband, the wife cannot preclude herself by her agreement from invoking the aid of the court to obtain more than has been agreed upon, in the event of necessity. Nor can the payment of a gross sum, which the wife has agreed to accept in discharge of her future claims to support, be regarded as standing on a different plane from agreements contemplating periodical payments. In *Calame* v. *Calame, 25 N. J. Eq. 548,* it was early held by our court of errors and appeals that our statute—now substantially the same as then—does not empower this court to award alimony in gross, and that view has since been given repeated recognition by the same court. That view flows, not only from the fact that our statute exhibits an intention that the subject shall be continuously dealt with according to varying circumstances of the parties, but also from the further fact, as suggested in *Lynde* v. *Lynde, 54 N. J. Eq. 473,* that the husband's ability to pay and the justice of the wife's enjoyment of her right

are subject to the change of circumstances which the court
cannot anticipate, and, hence, complete justice requires that
the court's power to act shall be kept open so long as it shall
be needed to direct just variation. Consistently with that
view our court of errors and appeals in *Lynde* v. *Lynde, 64
N. J. Eq. 736,* has defined a wife's claim for an allowance of
alimony as a purely personal right, and not, in any sense, a
property right, as a right in its nature not susceptible of
assignment by the wife to another, nor capable of enjoyment
by her in anticipation. From this conception of alimony as
the just expression of a matrimonial duty, it seems clear that
what the court cannot admeasure as a finality the husband
cannot limit by the purchase of immunity from future lia-
bility, should conditions arise in which justice impels a
reassertion of the rights of the wife." And in the recent case
of *Walker* v. *Walker, 118 N. J. Eq. 309,* this court reiterated
the "general rule" that "alimony remains perpetually subject
to judicial modification * * *." See, also, *Baumgarten*
v. *Baumgarten, 107 N. J. Eq. 274.*

If the obligation to render suitable support and mainte-
nance arises "out of the status of wedlock," is dictated by "a
state policy," and is in no sense a contractual obligation, and
the reciprocal right is "purely personal" in character, entirely
devoid of the qualities of a property right, and incapable "of
assignment" or "of enjoyment" by the wife "in anticipation"
(*Sobel* v. *Sobel, supra; Lynde* v. *Lynde, supra*), we are
unable to perceive a rational basis for the view that the wife
may make a contractual surrender of her statutory right to
alimony *in futuro* in consonance with her needs.

While this court undertook in *Calame* v. *Calame, supra,* to
enforce a maintenance agreement providing for the convey-
ance of lands and the payment of a sum in gross, in lieu of
alimony, and said *obiter* in *Sobel* v. *Sobel, supra,* that "There
seems to be no good and sufficient reason why alimony in
gross may not be allowed and enforced when assented to by
the parties, and the court of chancery, as the representative
of the state, to guard its interest and to enforce its statutory
policy, in relation to marriage and divorce, sanctions such a
course," we do not read either of these cases as authority for

the view that such composition agreement, thus judicially sanctioned, serves to divest chancery of its continuing jurisdiction under the statute, in the exercise of a sound discretion, to make a subsequent award of alimony in case of necessity. If considerations of policy disable the parties from depriving the court by mutual consent of its continuing superintendency over alimony, so also do they preclude the surrender of such jurisdiction by the court itself. In the *Calame case, supra,* Chief-Justice Beasley was careful to observe that, "when it appears that the separation of the wife, forming the groundwork of the agreement, was justifiable, and the provision is suitable, *to this extent* [italics ours] it is, in my judgment, safe to say that the contract should be upheld."

Without detracting from the validity and force of these inherent statutory limitations, it is to be observed that the record does not disclose that the judicial approval recited in the modified decree *nisi* was grounded in the conclusion, after due inquiry into the facts, that the provision made by the composition agreement was under all the existing circumstances wholly suitable and adequate. The instant petition avers that the agreement obliged the wife to convey to her husband certain real estate in "value * * * greater or at least equal to the total sum paid * * * in gross by way of alimony;" and the modified decree *nisi,* embodying no specific finding as to the sufficiency of the provision for the wife, merely decreed the amendment of the decree *nisi* by the deletion therefrom of the direction to the husband to pay alimony at the rate of $50 per month. So far as is revealed, there was a mere *pro forma* approval of the agreement so made by the parties.

There is no merit in the point that the present petition is in the nature of a bill of review, and such remedy is barred by the lapse of time. It is a petition under the statute for an allowance of alimony based upon an after-occurring change of circumstances; and this manifestly does not fall within the classification of a bill of review. *Barrett* v. *Barrett, 41 N. J. Eq. 139; Rigney* v. *Rigney, 62 N. J. Eq. 8.* See, also, *Walker* v. *Walker, supra.*

The order under review is accordingly affirmed.

*For affirmance*—THE CHIEF-JUSTICE, CASE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, HAGUE, JJ. 12.

*For reversal*—PARKER, BODINE, JJ. 2.