121 N.J. Super. 539 (1972)
298 A.2d 91
ROBERT A. TUCKER, PLAINTIFF,
v.
ELAINE B. TUCKER, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided December 11, 1972.
*542 Mr. Albert G. Besser for plaintiff (Messrs. Hannoch, Weisman, Stern and Besser, attorneys).
Mr. Everett M. Scherer for defendant (Messrs. Riker, Danzig, Scherer and Brown attorneys).
*543 CONSODINE, J.S.C.
The parties were married in mid-1962. Plaintiff abandoned defendant and their two children nearly seven years later. Defendant sued plaintiff for statutory support and maintenance 11 months thereafter, seeking a total in excess of $66,000 per year. Judgment, after trial, was entered in her favor in June 1971. It awarded $18,250 tax free for her support and that of the children, plus carrying charges on the marital residence and miscellaneous other expenses. The judgment of $18,250 was subsequently increased by the Appellate Division to $21,050.
Plaintiff, in this action, sued his wife for divorce on the separation ground, N.J.S.A. 2A:34-2(d). Defendant counterclaimed on the desertion ground, N.J.S.A. 2A:34-2(b), and sought alimony, support and equitable division of the property acquired by plaintiff during the marriage, N.J.S.A. 2A:34-23.
Plaintiff is a corporate executive with sizeable assets yielding income separate from his earnings. His total gross income for the years 1962 through 1969 was $1,015,882, Of this total $326,056 was earned income. The balance came from gifts, from original or converted assets owned by him prior to the marriage, or from trust payments under the provisions of a trust set up by his deceased father. Additionally, he also owns non-income yielding assets.
During the period that the parties lived together their total living cost (capital expenditure and day-by-day expense) exceeded plaintiff's earned income. His investments in that time were reinvestment of funds from property owned prior to marriage.
Plaintiff had been previously married. His former wife has remarried. Support of their children (plus other expenses incurred for them) is approximately $20,000 per year.
The proofs raise questions involving the amendatory legislation to the divorce, alimony and maintenance law of our State, L. 1971, c. 212, as amended by L. 1971, c. 217, effective September 13, 1971, N.J.S.A. 2A:34-1, §§ 3, 7, 8, 10, 20 and 23.
*544 Both parties argue construction of the statutory language in N.J.S.A. 2A:34-23, supra, that the court may award an equitable distribution of property "acquired by them or either of them during the marriage" (emphasis added).
Plaintiff argues that the marriage ceased on the date of abandonment and that any division of his assets should be as of that date. Defendant contends that the date of the entry of judgment in the separate maintenance action should be the cut-off date for division. The language of the statute would seem to equate the date of division of marital assets with the date of divorce since then the marriage is formally and finally ended.
A search for the legislative history of the property distribution clause of N.J.S.A. 2A:34-23 is unrewarding. The Divorce Law Study Commission which was the original source of Assembly Bill 1100 (1971 Regular Session) did not make any recommendations with respect to the distribution of property in the original draft of the legislation. Although the property question was alluded to in the public hearings before the Commission, the final report of the Commission specifically left the problem to further study by successor commissions. See Report of Divorce Law Study Commission at 97. The bill itself, which was introduced in the Assembly on May 14, 1970 and ultimately passed by that House with minor amendments on February 1, 1971, contained no mention of division of property acquired by the parties during marriage.
The language which ultimately became the last paragraph of N.J.S.A. 2A:34-23 was added by the Senate Judiciary Committee prior to passage of the bill by that body on March 25, 1971. (See second official copy reprint of Assembly Bill 1100, 1971 Regular Session). The Assembly, in concurring in the Senate amendments, made no change in the language of that section, nor were there any suggested amendments of that section by the Governor in his conditional veto message. The bill was reenacted in accordance with the Governor's recommendations by the legislature, and *545 was approved on June 14, 1971 as chapter 212 of the Laws of 1971.
Research of the legislation of other states leads to the conclusion that the pertinent portions of N.J.S.A. 2A:34-23 here involved were not grounded in any laws enacted in other jurisdictions but was rather the product of original draftsmanship by the Senate Judiciary Committee. Since that Committee kept no minutes and issued no report we have no guidance from it as to the construction of the language of this section.
That the language of the statute  "acquired * * * during the marriage"  is ambiguous seems apparent, because of the contrary opinions of the parties in this litigation, a literal reading of the words and the doubt of the court, each of the four interpretations requiring a different conclusion.
The amendatory legislation set a three-month waiting period before a complaint could be filed in extreme cruelty N.J.S.A. 2A:34-2(c). A waiting period in the instant case would not be inappropriate to the legislative intent. Plaintiff might well have returned to defendant after the abandonment. He did not file suit in statutory separate maintenance seeking a judgment setting support and maintenance for defendant and the children. Defendant apparently hoped in vain for a return of her errant spouse, but finally 11 months thereafter, hope failing, filed a complaint for separate maintenance and support.
It seems that at this stage the die was cast and the marriage was dead as far as both parties were concerned.
The entire philosophy underscoring N.J.S.A. 2A:34-23 is based upon a partnership concept, i.e., even though one spouse holds title, the property is the fruit of the labors of both. The old law, denying to the wife a participation in property built up over the years in her husband's name alone, while she stayed home as housewife or chatelaine, bore and attended their children, entertained, etc., and thus helped her husband amass such property, was regarded as inequitable.
*546 Hence our courts declined to transfer property from one spouse to another in a divorce proceeding, taking the view that the statute with respect to alimony limited it to money payments, and not judicial awards of a gross sum. Parmly v. Parmly, 125 N.J. Eq. 545, 547 (E. & A. 1939), citing with approval Calame v. Calame, 25 N.J. Eq. 548 (E. & A. 1874).
But when the marriage has permanently fallen apart and the parties are not even living together, it cannot be said that the "partnership" is continuing or that the wife is still contributing to the husband's income-producing abilities.
In re Osicka Estate, 1 Wash. App. 277, 461 P.2d 585 (Ct. App. 1969), supports this practical approach for determining the parameters of marriage "partnership" property rights. There suit was brought by a wife against her husband's estate for a division of his property. The parties had been separated for some years without court action between them. The court held that property acquired during permanent separation of the parties was the husband's separate property and was not subject to division because the "community" (i.e., partnership) no longer existed. Washington is a community property state. See also MacKenzie v. Sellner, 58 Wash.2d 101, 361 P.2d 165 (Sup. Ct. 1961).
To take the date of divorce as the statute implies, would be to reduce the language to an absurdity. Hypothetically, should a spouse of days or weeks or months or a few years, whose husband separated from her in modest means and thereafter acquired a fair-sized fortune by his own efforts, share therein in a subsequent divorce action as of the date of divorce?
Necessarily a court, in exercising its discretion to make an award to effectuate an equitable distribution of property acquired during the marriage, predicates such a judgment on many factors, not all of which occur in every case.
Painter v. Painter, 118 N.J. Super. 332, at 335 (Ch. Div. 1972) sets out from varied sources a compendium of determinative *547 factors in equitable division of property acquired during marriage and also a compendium of exclusions of property from such division (at 336). See also Capozzoli v. Capozzoli, 121 N.J. Super. 285 (App. Div. 1972).
Sister states  more particularly, community property jurisdictions  apply strikingly similar criteria in delineating which properties are subject to equitable division by the court upon divorce. California excludes "all property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof * * *." Cal. Civ. Code § 5108. See also Wash. Rev. Code, § 26.16.010; N.M. Stat. § 57-3-5; Nev. Rev. Stat., ch. 123.130; Idaho Code § 32-903; Ariz. Rev. Stat. § 25-213.
There is no question, on the testimony, that the living expenses of plaintiff and defendant exceeded the plaintiff's earnings between the date of marriage and the date of abandonment. The excess came from plaintiff's capital assets or their income, both nondistributive. In this regard see Price v. Price, 217 Cal. App.2d 1, 31 Cal. Rptr. 350 (D. Ct. App. 1963).
During the viable period of the marriage plaintiff and defendant became tenants by the entirety of the marital residence and of a farm property. In neither instance did defendant contribute towards the purchase or the furnishings. Her interests were gifts from plaintiff. Trotta v. Trotta, 103 N.J. Super. 295 (App. Div. 1968).
The marital home, with improvements made at the time of purchase, cost $173,000. The parties agree that its market value today is $130,000. The furnishings cost $60,000. There is a realty mortgage of $42,000.
The farm property is valued by the parties at $320,000, subject to a mortgage of $58,200. The furnishings cost $15,000.
*548 Defendant and the children live in the marital home. Plaintiff lives on the farm and there raises horses in a side-business of very substantial size.
Since the date of the separation plaintiff has paid amortization of mortgages on both properties. He is entitled to credit therefor in the adjustments to the date of final judgment herein. In the marital disenchantment of that period he would not have intended the payments as gifts; they were protective of his own investment and its possible loss by foreclosure. No credits will be allowed for tax or interest payments because plaintiff has had substantial benefit thereof on his income tax returns.
Both parties desire to have the marital residence transferred to defendant. Defendant also seeks the total net equity in the farm property.
On all of the facts it seems to me that this court should exercise its discretion to effectuate an equitable distribution of that part of the property acquired by them during the marriage and up to the date of the institution of the separate maintenance suit by (1) transferring title to the marital residence, free and clear of mortgage lien, to defendant; (2) by transferring title to the farm property to plaintiff, and (3) by directing that the congruent provisions of the final judgment of separate maintenance be incorporated in this judgment as decided herein so long as defendant (not re-married) and the two children occupy the residence, except that when each child reaches the age when certain trusts set up by plaintiff for their individual benefit (infra) yield monies in sufficient amount for the maintenance of each child, the maintenance set herein shall be reduced or eliminated.
Plaintiff's other assets, with a single exception, grew out of original (or converted) investments owned prior to the marriage.
The single exception involves the division of proceeds under the incentive compensation and pension plans of his employment. Under the former he has been the recipient *549 of certain units of stock and of cash credits, title to which would not vest in him for several years and which, even though vested in him, are not payable for about 20 years or on total disability.
Payments under the pension plan are similarly limited as to payment. There is no vesting of any interest in the pension plan at the present time.
Stock units and cash credits that vested prior to the date of marriage or subsequent to the filing of the separate maintenance action are not susceptible of equitable distribution. In re Osicka Estate and MacKenzie v. Sellner, supra. Those that vested between those two dates are properly subject to equitable distribution.
Neither Painter, nor any other New Jersey decision under N.J.S.A. 2A:34-23, has dealt with pension or incentive compensation plans. There is both statute and case law elsewhere among our sister states. In many instances the decisional law is applicable to consideration of both plans.
The California rule as to pension plans was set forth in Williamson v. Williamson, 203 Cal. App.2d, 8, 11, 21 Cal. Rptr. 164, 167 (D. Ct. App. 1962):
Pensions become community property, subject to division in a divorce, when and to the extent that the party is certain to receive some payment or recovery of funds. To the extent that payment is, at the time of the divorce, subject to conditions which may or may not occur, the pension is an expectancy, not subject to division as community property.
In Williamson the wife had appealed from the divorce judgment on grounds that she had not been awarded enough money and property. In particular, she contended that the husband's interest in a fire and police pension fund was subject to division. The terms of the fund provided that the husband would receive certain benefits in the event he was retired for disability, or after 20 years service. It made no provision for the withdrawal of any funds prior to the occurrence of any one of those two contingencies. The court *550 applied the above-quoted rule and held that the husband's interest in the pension fund was not subject to division.
See v. See, 64 Cal.2d 778, 51 Cal. Rptr. 888, 415 P. 2d 776 (Sup. Ct. 1966), clearly illustrates that this same rule is applicable to profit-sharing trusts. While the court held that the husband's interest in these trusts was subject to division, its holding was based upon a finding that the husband's interests were "irrevocable," i.e., subject to no contingencies.
In Texas the same rule is followed as in California. Angott v. Angott, 462 S.W.2d 73 (Tex. Civ. App. 1970), is clearly illustrative of this point. The court based its holding of divisability upon a finding that defendant husband had a "vested" right to benefits at the time of divorce. While he had not actually retired at that time, he was eligible to do so and to receive benefits, at his own discretion. See also, Taylor v. Taylor, 449 S.W.2d 368 (Tex. Civ. App. 1969); Busby v. Busby, 439 S.W.2d 687 (Tex. Civ. App. 1969), aff'd 457 S.W. 2d 551 (Tex. Sup. Ct. 1970); Webster v. Webster, 442 S.W.2d 786 (Tex. Civ. App. 1969). Other states follow this same rule. See Edwards v. Edwards, 74 Wash.2d 268, 444 P.2d 703 (Sup. Ct. 1968); Morris v. Morris, 69 Wash.2d 506, 419 P. 2d 129 (Sup. Ct. 1966); Le Clert v. Le Clert, 80 N.M. 235, 453 P.2d 755 (Sup. Ct. 1969).
Analogous to other types of property, only those pension and profit-sharing rights which actually "vested" during marriage are subject to division. See Benson v. Los Angeles, 60 Cal. 2d 355, 33 Cal. Rptr. 257, 384 P.2d 649 (Sup. Ct. 1963), where an ex-wife was denied a widow's penson because the pension did not "vest" until the contingency upon which payment of it depended (death of the ex-husband), and the plaintiff was already divorced at the time death occurred. See also, Cheney v. City and County of San Francisco, 7 Cal.2d 565, 61 P.2d 754 (Sup. Ct. 1936).
*551 Where a portion of those "vested" rights was earned before marriage, that portion is excluded from division. In Busby, supra, a divorce action where the wife claimed a portion of her husband's Air Force disability retirement benefits, the husband had been in the Air Force for 20 years, and therefore his benefits were "vested." However, he had been married to plaintiff during only a part of his 20 years of service. The court there evolved a formula to suit the facts.
Defendant should participate in the proceeds of the stock units and cash credits under the incentive compensation plan that vested between the date of the marriage and the date of filing the complaint in separate maintenance when those proceeds are made available to plaintiff, subject to income and any other taxes in her hands. That participation will be of the then value of the stock and cash credits that vested in the period of the marriage, as decided supra.
Defendant is not entitled to participation in any pension proceeds paid to plaintiff on age attainment or disability, since none of these is now vested.
Lastly, there is the question of alimony and support of the two children. Support and maintenance were set by the Appellate Division at $21,050 a year, undivided. Defendant now seeks to increase this amount by $10,000 a year.
There are various trusts by various trustors for the benefit of plaintiff's children from both marriages. We are here concerned only with the two children of this marriage. Each of the two children has $1,306,000 in trusts for her. Three of the trusts created by plaintiff are charitable ten-year trusts which now throw off about $1,300 a year over and above the necessary charitable contributions. This excess is paid to defendant for the support of the children.
In 1976, at the expiry of the first trust, $5,280 a year will become available for the benefit of the older child. A year later, on similar occurrence, $7,155.50 yearly may be used for the benefit of the younger child. In 1978 there will be *552 available for the benefit of both children the further sum of $5,500 per year. Defendant is trustee under all three instruments.
Defendant testified that her experience over a 12-month period showed the excess of expenses over support and maintenance to be $1,130.94. Against this she would presently have a throw-off from the two charitable trusts in excess of that amount.
No reason has been offered to grant alimony and support in excess of the amount granted so recently for proper support and maintenance. Alimony will be in the amount of $14,000 a year. Support of the children will be at $3,525 each a year. R. 4:79-9(a). These payments will be direct to defendant. Support will be reduced and finally extinguished as moneys become available from all the ten-year trusts. See supra.
Defendant also requests that a divorce (on the ground of desertion) be awarded to her only and that plaintiff (seeking divorce on the ground of separation) be denied a dual judgment. She premises this request on (1) the fact that plaintiff was the guilty party by virtue of the abandonment, and (2) the psychological lift such action would be to her ego.
N.J.S.A. 2A:34-2 sets up the causes of divorce. One of these is desertion; another is separation. N.J.S.A. 2A:34-7 in part states that if both parties make out grounds for divorce, a judgment may be granted to each. N.J.S.A. 2A:34-23 gives the court discretion (except where judgment is granted solely on the ground of separation) to consider the proofs in determining an amount of alimony that is fit, reasonable and just. It would seem that this would allow a court in its discretion to increase alimony because of misconduct by the husband. Desertion would not seem to be misconduct requiring an increase in alimony.
Plaintiff's primary and corroborative proofs have satisfied the three conditions for a separation divorce  residence in this State for a period of one year prior to the *553 filing of the complaint; living separate and apart in different habitation(s) from defendant for at least 18 months, and that there is no reasonable prospect of reconciliation. There is no reason on that record why he should not be granted a divorce. The same is true of defendant's cause of action in desertion.
Fault, under our statute, is not a basis for an increase in the equitable division of property acquired during the marriage; that is only true of alimony. N.J.S.A. 2A:34-23.
While there is authority to the effect that a court can consider the loss of self-confidence of a wife in the equitable distribution of property acquired during the marriage because of the divorce action against her, Carson v. Carson, 50 Hawaii 182, 436 P.2d 7 (Sup. Ct. 1967), there is no authority for denying a dual divorce to the offending spouse because to do so would give the other spouse a psychological lift. I will not be the first in this court to unlock Pandora's box.
Divorce to each party against the other, with judgment in other regards in accordance with this opinion.