Charles W. BUSSELL, Appellant,

v.

Stella BUSSELL, Appellee.

No. 4869.

Supreme Court of Alaska.

Feb. 20, 1981.

William M. Bankston, Bankston & McCollum, Anchorage, for appellant.

Peter Walton and M. Lee Holen, Peter Walton & Associates, Anchorage, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

This is a divorce action. The principal question for determination is whether or not the division of property between the parties was unjust.

Charles and Stella Bussell were divorced in June, 1979, after eighteen years of marriage. They have one son, and Stella also has children from her first marriage. At the time of their marriage, Charles and Stella had no significant assets other than approximately $70,000 in life insurance proceeds which Stella received upon the death of her first husband. Shortly after their marriage, the couple moved from California to Alaska. Charles worked as an electrical contractor and electrician, first in Cordova and later in Anchorage, with varying degrees of success. In late 1968, Charles established Bussell Electric Company in Anchorage. The business thrived in the 1970's,

and at the time of the divorce the couple's net worth was valued at $1.2 million.

In 1975, the couple separated. Stella stayed in Hawaii where the couple had been living and where her children were in school. Charles went to Alaska on business and never returned to their Hawaii home. Charles testified that during the separation he sent Stella $300.00 per week and also satisfied her requests for additional funds. During that time he also incorporated the business, had virtually all the shares issued to himself, and had the corporation issue him a promissory note for pre-incorporation income which remained in the business.

The divorce action was filed four years after the initial separation. After a lengthy hearing, the trial court ordered that Stella receive all the couple's real property, with a net value of $574,504.50, and a cash payment from Charles of $27,059.75. Charles received the family electric business, valued at $628,624.00. The trial court also ordered Charles to pay Stella alimony of $300.00 per week for one year, and $30,241.55 for attorney's fees.

## I.

The property division made by the trial court was essentially an equal division of property owned by the parties at the time of the divorce decree. Trial courts have broad latitude in making marital property divisions, and we will not disturb such decisions unless they are clearly unjust. *Schoning v. Schoning*, 550 P.2d 373, 374 (Alaska 1976); *Burrell v. Burrell*, 537 P.2d 1, 4 (Alaska 1975).

Charles first contends that the valuation of the property as of the date of divorce, rather than earlier, and the award to Stella of a condominium in Anchorage which Charles had purchased after their separation, were clearly unjust. His principal contention is that the parties were "equitably divorced" at the time they separated in 1975 and that any valuation or identification of marital assets should date back to that time. He argues that the court's failure to consider the time and manner of

acquisition of the property is grounds for reversal.[1]

Charles cites several cases which have recognized the concept of equitable divorce. The doctrine essentially provides that, where there is clear and unequivocal evidence that at a particular point prior to divorce the parties' marriage is no longer viable, identification of marital assets for the purposes of property division will be made as of that time rather than as of the date of divorce.[2]

We have never adopted the equitable divorce doctrine. However, even if we were to do so, the doctrine is not applicable in this case. Charles did testify that in 1975 he had come to the conclusion that the marriage had finished. But there is also testimony from Stella, which the trial court found credible, that on several occasions after their separation Charles asked her not to divorce him, and told her that he wanted to make the marriage work. Hence, there is sufficient evidence to support the trial court's finding that "the parties did not consider their marriage ended in 1975."[3]

■ The trial court found that the 1975 separation was not intended to be permanent. Thus, even if the doctrine of equitable divorce were applied, the court would not be required to consider only the marital property in existence in 1975 or the 1975 property values. The award was therefore not unjust on this basis.[4]

■ Charles next contends that the trial court erred in not giving him credit in the property division for the money he sent to Stella during the separation, and for the mortgage payments he made during that time on property awarded to Stella. Given the great disparity in income between Stella and Charles during those years, and the fact that the payments were apparently made with income from the business which was still property of the marriage, we find that the trial court's decision was not clearly unjust.[5]

■ Finally, Charles argues that the court erred in not considering the relative economic contributions of the parties to the marital estate. We have held that courts making property divisions should consider each spouse's relative contributions to the marriage, "whether of a pecuniary or of a more intangible nature." *Vanover v. Vanover*, 496 P.2d 644, 648 (Alaska 1972); *Burrell v. Burrell*, 537 P.2d 1, 4 (Alaska 1975). Stella's role in the marriage was primarily domestic, but this was apparently a role decided on by the parties jointly, and should be recognized as a valuable contribution to the marital enterprise. Stella also provided some direct contribution to the family business by performing secretarial and book-

1. In *Merrill v. Merrill*, 368 P.2d 546, 547–48 n.4 (Alaska 1962), we enumerated a number of factors which a court should consider in making a property division. The financial circumstances of the couple, including the time and manner of acquisition of any property, its value at the time and its income-producing capacity, if any, was one of the factors to be considered.

2. See *Brandenburg v. Brandenburg*, 167 N.J.Super. 256, 400 A.2d 823, 825–26 (App.Div.1979); *Tucker v. Tucker*, 121 N.J.Super. 539, 298 A.2d 91, 94 (Ch.Div.1972); and *In re Estate of Osica*, 1 Wash.App. 277, 461 P.2d 585, 588 (1969).

3. Moreover, it seems clear that Charles purchased the condominium at least in part with pre-separation marital assets, as the purchase was made the same year as the separation.

4. Charles has also argued here that the trial court erred in valuing certain Hawaii property. The figure chosen by the court was a compromise between the testimony of Stella's assessor and Charles' assessor. Charles claims that Stella's assessor's appraisal was unreliable because, unlike Charles' appraisal, it only used "one comparable," and that one was located in a different subdivision. Property appraisal is not an exact science. Given the discretion vested in the trial court, this claim falls short of showing that the valuation made was clearly unjust.

5. The cases Charles cites in support of his argument are not on point. *McGean v. McGean*, 339 A.2d 384 (D.C.1975), involved property which the parties did not jointly own. *Stanley v. Stanley*, 234 A.2d 810 (D.C.1967), upheld an unequal division of the interest in a residence in part because the wife had unilaterally stripped the residence of its furnishings. *Tucker v. Tucker*, 121 N.J.Super. 539, 298 A.2d 91 (Ch.Div.1972), involved a more permanent separation than this case.

keeping services at the inception of the business, and later by entertaining clients. When these contributions are considered along with the fact that we have "adopted the view that courts should be encouraged to provide for the financial needs of spouses by a property disposition, rather than by alimony," *Malone v. Malone*, 587 P.2d 1167, 1168 (Alaska 1978), we find that the property division made was not clearly unjust.

## II.

■ Charles appeals the award to Stella of $300.00 per week for one year so that she could "improve her commercial, secretarial and bookkeeping skills." He contends that she should have started preparing herself for the job market when they separated in 1975, and that the 1979 alimony award was unjust.

We held that the trial court was not in error when it found that "the parties did not consider their marriage ended in 1975." Stella testified that Charles led her to believe that there was a real possibility of salvaging the marriage. In these circumstances there was no reason for Stella to seek training for entry into the job market.

As noted above, we have adopted the view that the financial needs of divorcing spouses should generally be secured by an appropriate property division rather than by alimony, and an award of permanent alimony in this case would have been error. However, this award is of limited duration, and for a specified purpose. We find that the rehabilitative alimony award was not clearly unjust.

## III.

■ Charles also appeals the award of costs and attorney's fees to Stella.

AS 09.55.200, which governs the award in this case,[6] provides in pertinent part:

6. *Burrell v. Burrell*, 537 P.2d 1, 6 (Alaska 1975); *Vanover v. Vanover*, 496 P.2d 644, 648 n.3 (Alaska 1972).

7. *Johnson v. Johnson*, 564 P.2d 71, 77 (Alaska 1977), *cert. denied*, 434 U.S. 1048, 98 S.Ct. 896, 54 L.Ed.2d 800 (1978), cited by Charles, is not dispositive. That decision upheld an order that each party bear his or her own costs and fees

(a) During the pendency of the [divorce] action, the court may provide by order (1) that one spouse pay an amount of money as may be necessary to enable the other spouse to prosecute or defend the action

. . . . .

In *Burrell v. Burrell*, 537 P.2d 1, 7 (Alaska 1975), we suggested that trial courts should take into account the relative economic situations and earning powers of the parties involved when addressing the question of attorney's fees. This is apparently what the trial court did. Notwithstanding her property award, Stella still has much less earning potential than Charles. Furthermore, the court did consider Stella's share of the property when it awarded her only about one-half of the expenses she claims to have incurred. Award of partial fees to her under these circumstances was not an abuse of discretion.[7]

## IV.

■ The final issue on appeal concerns the trial court's denial of Charles' motion for a new trial on the issue of equitable divorce. Charles claims that the court should have granted the motion after Charles submitted evidence showing that Stella cohabited with another man after the couple's separation. This, Charles contends, proves that a permanent separation did occur in 1975, and the property division must be altered accordingly.

The evidence submitted by Charles consists of two affidavits filed concurrently with the new trial motion. One, by Charles himself, states that he was told in June, 1978, by Michael Millage, Stella's son by her first marriage, that Stella had been living

in light of the equal property division, equal amounts of fees each party had incurred, and the equal amounts of time each had spent. The decision only held that the failure to award fees and costs was not an abuse of discretion in such a situation. It did not state, nor did it imply, that an award to one spouse would have been improper.

with another man for a year. According to Charles, however, Millage refused to sign an affidavit to this effect. The other affidavit submitted by Charles is that of Eric Jensen, a Bussell Electric employee, who states that he often cared for the couple's son. Jensen states that he was frequently at Stella's residence late at night, and that she was not present, although her children were. He also claims that Stella gave him a phone number at which she could be reached at night, and identified the number as belonging to the man with whom Charles now claims she was living.

We conclude that the trial court did not abuse its discretion in denying a new trial based on these affidavits.[8] The supposedly damaging evidence contained in them is hearsay, and does not compel the conclusion that an equitable divorce took place in 1975. Moreover, a grant of a new trial would have been improper under our decision in *Montgomery Ward v. Thomas*, 394 P.2d 774 (Alaska 1964). In that case we held that in order to justify a new trial, the newly discovered evidence "must be of such a nature that it could not have been discovered before trial by due diligence." *Id.* at 776. Charles argues that the evidence could not have been discovered before trial because "Stella would not admit to it." However, Stella was not the source of the information in the affidavits, and Charles did not show that the information was not available to him before trial.

The judgment of the superior court is AFFIRMED.

---

**8.** The abuse of discretion standard was established in the early case of *Ahlstrom v. Cum-*

*mings*, 388 P.2d 261 (Alaska 1964).