NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1240-18T4

DAVID SCOTT LANDAU,

       Plaintiff-Respondent,

v.

STACY LANDAU,

       Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**September 12, 2019**

**APPELLATE DIVISION**

Argued March 13, 2019 - Decided September 12, 2019

Before Judges Fuentes, Accurso and Vernoia.

On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1196-12.

Karin Duchin Haber argued the cause for appellant (Haber Silver & Simpson, attorneys; Karin Duchin Haber, of counsel; Carole A. Hafferty, on the briefs).

Mark H. Sobel argued the cause for respondent (Greenbaum, Rowe, Smith & Davis LLP, attorneys; Mark H. Sobel, of counsel and on the brief; Barry S. Sobel, on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

The question presented by this appeal, here on leave granted, is whether the changed circumstances standard of Lepis v. Lepis, 83 N.J. 139, 157 (1980), continues to apply to a motion to suspend or terminate alimony based on cohabitation following the 2014 amendments to the alimony statute, N.J.S.A. 2A:34-23(n). We determine the party seeking modification still has the burden of showing the changed circumstance of cohabitation so as to warrant relief from an alimony obligation, see Martindell v. Martindell, 21 N.J. 341, 353 (1956), and hold the 2014 amendments to the alimony statute did not alter the requirement that "[a] prima facie showing of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status." Lepis, 83 N.J. at 157. Because the trial court ordered discovery in this case without a prima facie showing of changed circumstances, we reverse.

Plaintiff David Scott Landau and defendant Stacy Landau were divorced in 2014 after an almost eleven-year marriage and three children. Pursuant to the marital settlement agreement incorporated into their judgment of divorce, which was entered after the effective date of the 2014 amendments to the alimony statute,[1] the parties agreed that defendant would receive limited duration term alimony.

---

[1] L. 2014, c. 42, § 1 became effective the day it was enacted, September 10, 2014.

Plaintiff agreed to pay defendant $44,000 per month for the first three years, until September 2017, and $40,000 per month for the next four-and-a-half years, until March 2022. The parties agreed alimony would terminate on the death of either party, defendant's remarriage or March 31, 2022, whichever first occurs. The agreement further provides that "[n]otwithstanding anything contained herein to the contrary, the Wife's cohabitation as defined by then-current statutory and case law shall be a basis for the Husband to file an application seeking a review and potential modification, suspension or termination of alimony pursuant to New Jersey law."

In December 2017, plaintiff moved to terminate, suspend or modify alimony based on defendant's cohabitation with the man plaintiff alleged defendant had been seeing exclusively for over a year. Plaintiff filed a certification in support of the motion alleging the two had traveled together, attended social activities as a couple and posted photos and accounts of their activities on social media sites. Plaintiff alleged the man engaged in many activities with the parties' children and regularly slept over at defendant's home, as she did at his home. Plaintiff claimed the man attended events he used to attend with defendant, including family birthday dinners with her parents. He further claimed the man attended the Bar Mitzvah of one of the parties' sons and was seated next to defendant in the position of honor for a

parent of the child being Bar Mitzvahed. At the celebration afterwards, plaintiff alleged defendant publicly acknowledged the man and their relationship in her speech. He also claimed defendant told him she moved her brokerage accounts to the firm where the man works and got a "friends and family discount."

Defendant opposed the motion and cross-moved to restrain plaintiff from harassing her and sought her counsel fees for having to defend a motion without "even prima facie support." Defendant filed a certification averring that having a boyfriend does not mean she is cohabiting. She acknowledged that they traveled together, each paying their own way, and occasionally slept over at one another's home, as one would expect of two adults in a dating relationship.

Defendant denied, however, that they were in a relationship tantamount to marriage. She averred the two had "never discussed [their] 'future' with respect to merging [their] lives," performed no household chores for one another, had no intertwined finances, do not share living expenses and do not have authority over one another's children. She noted each of them took separate family vacations, not something that married couples typically do. Defendant also noted she often attended social events alone, and that her boyfriend did not attend her law school graduation or her swearing-in

ceremony, something he certainly would have done had they been in a relationship akin to marriage. As to her son's Bar Mitzvah, defendant noted her boyfriend attended as her "date" and thus sat next to her, but did not participate in the ceremony and his presence was not commemorated by being included in any family photos. She denied she received any discount in connection with moving her brokerage accounts, and noted her boyfriend had nothing to do with her accounts at the firm. Defendant averred that while she and her boyfriend enjoyed one another's company, they were simply dating on a regular basis and had "no obligations" to one another.

In reply, plaintiff submitted the certification of the ex-state trooper plaintiff employed to surveil defendant and the man she was seeing. Although that individual certified based on his "surveillances" and "other information from [plaintiff], all of which indicates that [defendant] and [her boyfriend] cohabit in each other's residence approximately 75% of the time period examined," he did not identify the time period and specified only two instances in which he spotted defendant or her boyfriend leaving the other's home in the morning.

Following oral argument on the motions, the judge put his ruling on the record. Although acknowledging the "general task for the judge hearing the [cohabitation] motion is to determine whether the moving party has established

A-1240-18T4

a prima facie case of cohabitation," meaning that plaintiff's "proffered evidence, if . . . unrebutted would . . . sustain a judgment" in his favor, the judge "decided that [he was] not going to decide whether . . . plaintiff has made out a prima facie case, but [he was] going to allow discovery . . . to allow . . . plaintiff the opportunity to make a showing of a prima facie case, or not, as the case may be."

Conceding that neither counsel had been able to locate "a case that clearly says that a judge in [his] position can do that," the judge noted certain "dicta, in unpublished cases, which [he was] not relying on, that seem to indicate that judges have" permitted discovery "before deciding the motion." Lamenting the lack of "a clear Appellate Decision on this point" and acknowledging that much of plaintiff's "proffered evidence . . . is consistent with either a dating relationship or a cohabitation relationship," the judge nevertheless determined that allowing "certain discovery" from which plaintiff "either will or won't be able to make out a prima facie showing" was the "fair and equitable thing to do in this case."

The judge explained that "because of the nature of a cohabitation relationship, the difficulties of proving it, . . . and the proffered evidence that

6

is consistent with potential concealment[2] of such a relationship, [he was] going to authorize limited discovery . . . [of] 15 interrogatories and notices to produce on . . . any of the [statutory] factors . . . as well as a deposition of . . . defendant and a deposition of [defendant's boyfriend]." The judge stated that upon completion of that discovery he would expect plaintiff to then "essentially re-file [his] motion, if [he thought he could] make out a prima facie case."

The court thereafter entered an order finding plaintiff had made "a sufficient showing to warrant limited discovery concerning the existence of a prima facie cohabitation relationship between defendant and her alleged cohabitant," such discovery being "limited in scope to the factors set forth in N.J.S.A. 2A:34-23(n)." The court subsequently denied defendant's motion for reconsideration, although reiterating it "could not conclude" from the evidence

---

2  Plaintiff alleged defendant took down her Facebook posts referring to her boyfriend after plaintiff confronted her about cohabiting with him. He also alleged he saw her boyfriend's car one day parked in her driveway in such a way as to "mak[e] it difficult for anyone to see" and spied her boyfriend "literally hiding behind and peeking through a bush, apparently waiting for [plaintiff] to leave." Defendant claimed she did not take down her Facebook posts, that plaintiff is not her Facebook "friend," and he has no access to her private account, making it unclear as to where he acquired the "facts" he proffered to the court. As to plaintiff's allegation that her boyfriend was "hiding" in her driveway, defendant claimed he was simply trying to avoid her lawn sprinklers splashing water on his Porsche. She further noted that were she intent on concealing her boyfriend's presence at her home, she would have directed him to park in her garage.

proffered by plaintiff "that he had made a prima facie case."  Expressly finding "[w]e are not at the stage where it would be appropriate for [the court] to find a prima facie case, which would authorize discovery and also very significantly require a plenary hearing"[3] where defendant would have the burden of proof,[4] the judge reaffirmed his ruling permitting "limited discovery" after which plaintiff "still will have to make a prima facie case showing."

Because counsel could not agree on the "limited discovery" allowed, the court conducted a case management conference on the record to resolve their discovery dispute.  After reviewing the discovery propounded by plaintiff, the court noted the "very broad standard when it comes to discovery" and found the requested information was "reasonably calculated to lead to admissible evidence concerning the nature of the relationship."

Thus, although the court restricted the discovery to a two-year period instead of the five years requested by plaintiff, the discovery of defendant it permitted included production of:

- All bank account statements;

---

[3] Lepis provides "a party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary."  83 N.J. at 159.

[4] See Ozolins v. Ozolins, 308 N.J. Super. 243, 248-49 (App. Div. 1998).

- All brokerage account statements;

- All IRA and retirement account statements;

- Documents reflecting all securities and investments;

- All records of transactions involving assets of any kind;

- Statements of all bank accounts not in defendant's or her boyfriend's names for which either was authorized to deposit or withdraw funds;

- All records pertaining to real estate acquired;

- Copies of filed tax returns;

- Copies of all credit card and charge account records;

- Copies of all loan applications or financial statements;

- Copies of all travel receipts;

- Copies of all communications between defendant and any financial advisor;

- Copies of defendant's boyfriend's utility bills and all bank records and credit card statements for any account to which defendant has access; and

- Copies of all financial documentation relating to any items paid by defendant's boyfriend on her behalf.

9

In addition to that financial discovery, the court also permitted plaintiff to demand of defendant "[c]opies of all communications between defendant and [her boyfriend]," including but not limited to "letters, cards, emails, texts or voicemails"; "[a]ll documents, including but not limited to, invitations, defendant's personal calendar and defendant's electronic calendar for all events attended for the past [two] years"; all defendant's and her boyfriend's EZ Pass records; and copies of "any and all" of defendant's "social media posts" "naming, identifying, mentioning and/or 'tagging' [defendant's boyfriend] and/or any vacations or other events attended by both defendant and [her boyfriend]" in advance of their depositions.

We granted defendant's motion for leave to appeal and stayed the discovery pending our disposition.

Defendant argues that ordering discovery without a prima facie showing of cohabitation was reversible error. Plaintiff contends that defendant's position that he "first demonstrate a prima facie showing of cohabitation" before being permitted to conduct discovery "will render the 2014 amendments of N.J.S.A. 2A:34-23(n) essentially meaningless." He argues in those amendments "our Legislature signaled a clear departure from then-existing law — i.e., Lepis . . . and its progeny — with respect to analyzing motions to terminate alimony based upon cohabitation." He also argues that the parties'

marital settlement agreement, which provides him the right to seek termination, suspension or modification of his alimony obligation should defendant "cohabit with another individual pursuant to then-existing law (now N.J.S.A. 2A:34-23(n))" entitles him "to all information statutorily required for analysis" under that statute, including "all relevant financial information."[5]

The power of the Family Part to enter a divorce and award alimony is, of course, statutory. Parmly v. Parmly, 125 N.J. Eq. 545, 546 (E. & A. 1939) ("The jurisdiction of chancery to award permanent alimony as an incident to a decree of divorce a vinculo matrimonii [from the bond of matrimony] in the wife's favor is statutory in origin."). Our Court of Errors and Appeals interpreted the 1937 Revised Statute providing that "after decree of divorce, the court of chancery may make such order touching the alimony of the wife . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just," N.J. Rev. Stat. §2:50-37 (1937), as "investing chancery with a continuing jurisdiction after a divorce . . . not subject to the

---

[5] Plaintiff cites nothing in the parties' agreement or any case to support his assertion that the inclusion of an anti-cohabitation clause in a marital settlement agreement entitles him "to all information statutorily required for analysis" under N.J.S.A. 2A:34-23(n), including "all relevant financial information," without a prima facie showing of cohabitation. Accordingly, we deem the argument as without sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(1)(E), and do not consider it further.

control of the parties, as regards . . . alimony." Parmly, 125 N.J. Eq. at 547. The Court noted "this jurisdiction has been conferred in substantially similar language" "[f]rom early times."[6]  Ibid. (citing Nixon's Digest 206 § 9 (2d ed.); N.J. Rev. Stat. § 19 (1877)).

N.J.S.A. 2A:34-23, our current statute, similarly provides that "after judgment of divorce . . . the court may make such order as to the alimony or maintenance of the parties . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just."  The continuing jurisdiction of the Family Part to modify the alimony fixed in the original judgment of divorce "upon application by either party" is now express in N.J.S.A. 2A:34-23, which "provides that such orders 'may be revised and altered by the court from time to time as circumstances may require.'" Martindell, 21 N.J. at 352.  It is that language, which the Legislature did not alter in the 2014 amendments, which codifies that "alimony and support orders define only the present obligations of the former spouses" and grounds the

---

[6]  Indeed, the Supreme Court in Martindell noted "support or alimony for the wife has been an incident of divorce proceedings" in New Jersey "since the act of December 2, 1794 which vested jurisdiction in the Court of Chancery in divorce cases, specified the grounds for divorce, and provided that the court may make such order relating to the wife's alimony as 'may be fit, equitable and just,'" and that "[l]ater enactments carried forth similarly comprehensive authority which is now found in N.J.S.A. 2A:34-23." 21 N.J. at 351-52.

court's equitable power to review and modify such orders "on a showing of 'changed circumstances.'" Lepis, 83 N.J. at 146; see also Quinn v. Quinn, 225 N.J. 34, 49 (2016).

As this history makes plain, the Family Part's jurisdiction to modify orders providing for alimony or child support on changed circumstances long pre-dates Lepis. Lepis was simply the Court's opportunity to provide direction for "the standards and procedures" trial courts should employ "for modifying support and maintenance arrangements after a final judgment of divorce." 83 N.J. at 143. In Lepis, the Court: 1) addressed "the effect of a consensual agreement upon the court's power to modify obligations of support and maintenance"; 2) "examine[d] generally what constitutes 'changed circumstances' so as to warrant a modification of those obligations"; and 3) established "the procedures that a court should employ when passing upon a modification petition — particularly the allocation of the burdens of proof and the conditions for compelling production of tax returns." Id. at 145.

As the Legislature made no change to the language providing that orders "the court may make . . . as to the alimony or maintenance of the parties" "may be revised and altered by the court from time to time as circumstances may require," N.J.S.A. 2A:34-23, we see no indication the Legislature evinced any intention to alter the Lepis changed circumstances paradigm when it defined

cohabitation and enumerated the factors a court is to consider in determining "whether cohabitation is occurring" in the 2014 amendments to N.J.S.A. 2A:34-23.[7] See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (noting courts

---

[7] N.J.S.A. 2A:34-23(n) provides:

> n. Alimony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household.
>
> When assessing whether cohabitation is occurring, the court shall consider the following:
>
> (1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;
>
> (2) Sharing or joint responsibility for living expenses;
>
> (3) Recognition of the relationship in the couple's social and family circle;
>
> (4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;
>
> (5) Sharing household chores;
>
> (6) Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of R.S.25:1-5; and
>
> (7) All other relevant evidence.

(continued)

A-1240-18T4

may not "write in an additional qualification which the Legislature pointedly omitted in drafting its own enactment" (quoting <u>Craster v. Bd. of Comm'rs of Newark</u>, 9 N.J. 225, 230 (1952))); <u>see also</u> 2B Norman J. Singer & J.D. Shambie Singer, <u>Sutherland Statutes and Statutory Construction</u> § 49:9 at 127-28 (rev. 7th ed. 2012). (noting "legislative action by amendment or appropriation of some parts of a law which has received a contemporaneous and practical construction may indicate approval of interpretations relating to the unchanged and unaffected parts").[8]    Plaintiff provides no support

---

(continued)

> In evaluating whether cohabitation is occurring and whether alimony should be suspended or terminated, the court shall also consider the length of the relationship. A court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis.

[8]   That interpretative principle has greater force here as the Legislature in N.J.S.A. 2A:34-23(n) essentially adopted the definition of cohabitation the Court endorsed in <u>Konzelman v. Konzelman</u>, 158 N.J. 185, 202 (1999):

> [c]ohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle.

(continued)

whatsoever for his claim that the Legislature in 2014 "signaled a clear departure" from Lepis "with respect to analyzing motions to terminate alimony based upon cohabitation," and indeed his brief is devoid of any statutory analysis.

Plaintiff does not dispute he bears the burden of establishing changed circumstances so as to warrant a modification of the alimony obligation he voluntarily assumed in the parties' marital settlement agreement. See Lepis, 83 N.J. at 157 (holding "[t]he party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief from the support or maintenance provisions involved"). He simply asserts that "N.J.S.A. 2A:34-23(n) does not require that [he] first demonstrate a prima facie showing of cohabitation . . . before being permitted to conduct discovery." Plaintiff does not identify the precise language in the statute that supports his argument, and does not offer any justification, beyond the difficulties in making a prima facie showing of cohabitation, that entitles him to know the intimate details of defendant's life and finances and those of her current boyfriend. See Quinn,

---

(continued)

As the Court in Konzelman likewise expressed its continued allegiance to the Lepis changed circumstances standard, see id. at 194-95, we can safely assume the Legislature was aware of the Lepis paradigm, at least insofar as it affects N.J.S.A. 2A:34-23(n). See Maeker v. Ross, 219 N.J. 565, 575 (2014) (noting "the Legislature is presumed to be aware of judicial construction of its enactments" (quoting DiProspero, 183 N.J. at 494)).

225 N.J. at 54 ("We do not today suggest that a romantic relationship between an alimony recipient and another, characterized by regular meetings, participation in mutually appreciated activities, and some overnight stays in the home of one or the other, rises to the level of cohabitation. We agree that this level of control over a former spouse would be unwarranted.").

There is no question but that a prima facie showing of cohabitation can be difficult to establish, see Konzelman, 158 N.J. at 191-92 (describing the seven days a week, 127 days of surveillance of Mrs. Konzelman's residence), precisely for the reason the trial court identified, that the readily available evidence is often "consistent with either a dating relationship or a cohabitation relationship." But that is hardly a new problem and it cannot justify the invasion of defendant's privacy represented by the order entered here. We are confident the Lepis paradigm requiring the party seeking modification to establish "[a] prima facie showing of changed circumstances . . . before a court will order discovery of an ex-spouse's financial status," 83 N.J. at 157, continues to strike a fair and workable balance between the parties' competing interests, which was not altered by the 2014 amendments to the alimony statute.

Because the trial court judge found plaintiff had not established a prima facie case of the changed circumstance of defendant's cohabitation, plaintiff

17

was plainly not entitled to discovery under <u>Lepis</u>. <u>See</u> <u>ibid.</u> As nothing in the 2014 amendments to the alimony statute altered "the procedures that a court should employ when passing upon a modification petition — particularly the allocation of the burdens of proof and the conditions for compelling production of tax returns," <u>id.</u> at 145, the Court adopted in <u>Lepis</u>, we reverse the order for discovery.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1240-18T4