LARIO, J.T.C.
Plaintiff appeals from a transfer inheritance tax assessment made by defendant through the Inheritance Tax Bureau (ITB) of the Division of Taxation against the estate of Joseph Rand, *521 in which defendant disallowed a claimed deduction from the value of various bank certificates of deposit, securities and investments owned by decedent jointly with his wife as of the date of his death.
Joseph Rand died on September 29, 1982. In his holographic will, which was admitted to probate, decedent made specific bequests of $15,000 to each of his two daughters; $5,000 to each of his two grandchildren; $5,000 to his son-in-law, and an additional bequest of $2,500 each to his wife, one daughter and her husband for a cruise to be taken within three years of his death. The residue of his estate was bequeathed to his wife, Arlene, who was also appointed executrix of the estate.
Arlene Rand filed an inheritance tax return with the ITB wherein no real property was listed under “Schedule A (real property owned by decedent individually or jointly).” In “Schedule B (personal property owned individually or jointly by decedent)” were listed jointly-owned bank accounts, savings certificates of deposit, United States savings bonds, United States treasury notes, bonds issued by various governmental authorities and stock of two different corporations. She listed all of the above personal property at an aggregate market value of $384,793.36, but claimed that only $192,396.68 (one-half of their value) was taxable in that the investments were equally owned by decedent and herself and his taxable interest was only 50%. She also claimed exemptions for the bequests to the two daughters of $15,000 each and of $5,000 each to the two grandchildren totaling $40,000.
Defendant, through the ITB, disallowed the estate’s claim to be subject to taxation to only one-half of the jointly held property because ITB deemed that the wife had not contributed to the purchase of any of this personal property. Thus, there was assessed a tax of $17,249.60 on defendant’s determination of the full market value of the personal property of $381,-245.25 *522 [1] as though the property had belonged absolutely to decedent. The bureau further determined that: (1) the entire net estate was owned jointly; (2) the net estate passed to the surviving widow by right of survivorship by operation of law and not by will; and, (3) there was no property remaining in decedent’s probate estate, therefore, there existed no property to pass by way of the bequests to the daughters and grandchildren. Accordingly, plaintiff’s claimed exemption of $40,000 bequeathed to the children and grandchildren was also denied.
Arlene Rand and decedent were married on December 22, 1935. During their marriage Arlene was never gainfully employed outside of the home. She was mainly a homemaker rearing their two children and managing and taking care of the household generally. During the course of their marriage, Mr. and Mrs. Rand regularly saved portions of their income which they deposited in joint bank checking and saving accounts. As their savings in these accounts grew, they regularly withdrew excess funds which they invested in various investments such as United States savings bonds, treasury notes, certificates of deposit and corporate stock. When these investments matured they reinvested the proceeds in similar investments. From their inception all investments were originally titled in both names with the right of survivorship and each individually had the right to withdraw funds from the various savings accounts, checking accounts and other investments without first seeking approval from the other. Mrs. Rand ran the household and ordered, bought and paid for various items without first securing permission from her husband. Also, without first necessarily consulting her husband, she ordered repairs to the home, purchased furniture, other household items and food for the family. She paid for these repairs and purchases from their joint checking and savings accounts by issuing checks or withdrawals signed by her individually. Each had the right to individually make purchases and each had the right to individu *523 ally pay for them by withdrawals from their various joint accounts without the necessity of first seeking permission or the co-signiture of the spouse.
Joseph Rand retired in May or June 1976. In April 1978 his spouse individually became entitled to, and began receiving, social security payments in her individual name. The total amount of social security payments received by Mrs. Rand up to the date of Joseph’s death was $5,696.50.
Mrs. Rand and her husband together opened the various bank accounts which they titled in both of their names. The stocks and bonds were purchased through a joint brokerage account which they had opened in both names and signed. According to schedule B of the inheritance tax report, which was admitted in evidence, there existed at the time of Joseph’s death one checking account, ten separate bank accounts, consisting of various money market accounts and certificates of deposit, five United States savings bonds and treasury notes, 17 various state and municipal bonds and two separate corporate stock investments. All of the above personal property was titled jointly in the names of Joseph and Arlene Rand. The ten bank accounts were opened in 1980,1981 and 1982; one of the United States savings bonds was purchased in 1978; two in 1979 and it was not known when the remaining two were purchased, however, they matured in 1985 and 1986 respectively. The state and municipal bonds were acquired between 1976 and 1982. The two corporate stock investments were made in 1972 and 1973.
Defendant contends that the assets in issue were held in joint tenancy and that plaintiff, as the surviving co-owner with the right upon the death of her husband to the immediate ownership of the bonds, received a transfer taxable on the full value of the bonds under N.J.S.A. 54:34-1(f) which provides in pertinent part:
The right of the surviving joint tenant ... to the immediate ownership or possession and enjoyment of ... personal property held in the joint names of two or more persons, or deposited in banks or other institutions or depositories in the joint names of two or more persons and payable to either or the survivor ..., shall upon the death of one of such persons be deemed a transfer taxable in *524 the same manner as though such property had belonged absolutely to the deceased joint tenant or joint depositor and had been devised or bequeathed by his will to the surviving joint tenant or joint tenants, person or persons, excepting therefrom such part of the property as such survivor or survivors may prove to the satisfaction of the Director of the Division of Taxation to have originally belonged to him or them and never to have belonged to the decedent.
Plaintiff claims that for inheritance tax purposes the accounts should be treated as owned equally by herself and her husband and that upon his death only 50% of the total value is taxable. In the alternative she claims that if the total estate is deemed to have been solely the property of her husband, he then had the right to bequeath a portion thereof to his children and proper tax credit for these bequests should have been given by the ITB. See Bauer v. Crummy, 56 N.J. 400, 267 A.2d 16 (1970) wherein Chief Justice Weintraub stated:
The question then is whether, if the depositor intended only to accomplish a gift effective on his death, he may countermand that testamentary instruction by his last will and testament. On the hypothesis that a joint tenancy was not created and that the depositor intended only to achieve a gift effective upon his death, we see no reason why a will, evidencing unequivocally an intent to dispose of the account, should not be honored. The ultimate purpose of the statute is to satisfy the depositor’s true intention and not to frustrate it. The statute does not purport to place the bank account beyond the depositor’s power to dispose of it by will. The depositor being the sole owner of the account, entitled to withdraw all of it during his lifetime, there is no apparent reason to deny him the power to achieve his final intention by a last will and testament plainly countermanding the testamentary expression in the terms of the bank account, [at 410-411, 267 A.2d 16]
Initially, it is the position of plaintiff that “the rights of a widow of a forty-seven year marriage should at least be equal to those of a woman whose marriage was terminated by divorce,” and she should be entitled to receive the benefits of equitable distribution as set forth in N.J.S.A. 2A:34-23 which provides that the court may make such awards “to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them during the marriage.”
The court agrees with the Director’s response that it is improper to apply a statute dealing with the division of property between spouses upon their divorce to a tax situation where the Legislature was very specific in subjecting certain types of property to an inheritance tax. The New Jersey transfer *525 inheritance tax, N.J.S.A. 54:33-1 et seq., is a “privilege levy on the right of succession to property transferred by ‘decedents,’ levied on the transferee, ‘in certain cases’ specified by the legislation____” In re Estate of Ann Boyd Lichtenstein, 52 N.J. 553, 559, 247 A.2d 320 (1968). Therefore, the taxability of the joint accounts in issue is controlled by our inheritance tax statutes.
Nevertheless, in construing N.J.S.A. 54:34-1(f) we should not overlook the intent of the Legislature as expressed in other statutes or policy decisions expressed by our courts relative to property rights between husband and wife.
The initial issue to be determined is whether any of the assets included in the joint accounts fall within one the exceptions contained in N.J.S.A. 54:31-1(f), “to have originally belonged to plaintiff and never to have belonged to decedent.” Under this exception if any of the funds in dispute were, at the time of the opening of the respective accounts, property belonging to plaintiff or received by her as a gift by way of inter vivos transfer, a tax on that portion is not applicable. As stated in In re Estate of Lichtenstein, supra: “It should be kept in mind that a transfer inheritance tax is not and was never intended to be a general gift tax.” 52 N.J. at 559, 247 A.2d 320.
Although it is conceded that plaintiff was never gainfully employed outside the home, under the facts of this case can it be reasonably concluded that her husband’s initial income was not partially earned by plaintiff? It is uncontroverted that for 47 years—from the date of their marriage in 1935 until the husband’s death—plaintiff was a loyal wife and devoted mother. While her husband was employed outside the home, she was employed within the home, rearing their children, purchasing clothing and food for the entire family, preparing their meals, generally supervising the running of the household, furnishing and repairing their home and paying most marital bills.
As observed by Judge Pressler:
[Mjarriage is a joint enterprise whose vitality, success and endurance is dependent upon the conjunction of multiple components, only one of which is financial. *526 The nonremunerated efforts of raising children, making a home, performing a myriad of personal services and providing physical and emotional support are, among other noneconomic ingredients of the marital relationship, at least as essential to its nature and maintenance as are the economic factors, and their worth is consequently entitled to substantial recognition. Thus, the extent to which each of the parties contributes to the marriage is not measurable only by the amount of money contributed to it during the period of its endurance but rather by the whole complex of financial and nonfinancial components contributed. [Gibbons v. Gibbons, 174 N.J.Super. 107, 112-113, 415 A.2d 1174 (App.Div.1980) ]
In Rothman v. Rothman, 65 N.J. 219, 320 A.2d 496 (1974) our Supreme Court noted that our Legislature, by adopting the concept of equitable distribution reflected in N.J.S.A. 2A:34-23:
gives recognition to the essential supportive role played by the wife in the home, acknowledging that as homemaker, wife and mother she should clearly be entitled to a share of family assets accumulated during the marriage. Thus the division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership, [at 229, 320 A.2d 496]
And, in Tucker v. Tucker, 121 N.J.Super. 539, 298 A.2d 91 (Ch.Div.1972) our Chancery Division explained our revised, modern-day recognition of a housewife’s and mother’s contribution to marital assets, stating:
The entire philosophy underscoring N.J.S.A. 2A:34-23 is based upon a partnership concept, i.e., even though one spouse holds title, the property is the fruit of the labors of both. The old law, denying to the wife a participation in property built up over the years in her husband’s name alone, while she stayed home as a housewife or chatelaine, bore and attended their children, entertained, etc., and thus helped her husband amass such property, was regarded as inequitable, [at 545, 298 A.2d 91]
In the instant case decedent recognized, early in their marriage, his wife’s contribution to marital and financial success. The husband acknowledged that those funds remaining after payment of day-to-day expenses, which were subsequently invested, were earned and owned jointly. This court finds as a fact that all of these excess funds, when originally invested, had been earned jointly, were owned jointly and were invested jointly.
In the event that an appellate court should reverse the above findings, I then find that at the time the original excess earnings were invested the husband gave 50% thereof to his wife and they invested these sums jointly. These funds were not placed in joint names merely for the use and convenience of *527 the husband, whereby ownership would be retained by the donor, Bauer v. Crummy, supra, but instead each had the absolute right to utilize these deposits and investments; and, in fact, it was the wife who exercised main control over these funds whereby she incurred and paid for their various obligations. By placing the funds in joint accounts and granting unrestricted power to his wife to make withdrawals decedent effectively gave 50% of the funds to his wife. This result was recognized in Kelly v. Kelly, 135 N.J.Eq. 75, 37 A.2d 288 (Prerog.Ct.1944) wherein the court concluded:
Assuredly, the structural substance of a bank account as disclosed by the terms of its creation is exceedingly noteworthy. The stipulations under which an account is originated and maintained may sometimes compose persuasive evidence of a deliberate gift by each joint owner to the other to take effect in praesenti. The intent with which the alleged donor established the account is a fact always fundamental, [at 76, 37 A.2d 288]
The court finds that when decedent and his wife together opened the original joint accounts in issue, they acknowledged and agreed that the funds deposited were owned equally and they possessed equal ownership of these investments; therefore, whether the wife’s original share is concluded to be owned by her by reason of being earned or received as a gift is immaterial. In either event, at the time each original joint investment was made 50% thereof constituted her original contribution. Additionally, the wife is unquestionably entitled to share in the incremental value over a period of 47 years of these jointly invested funds. See Griffith v. Griffith, 185 N.J.Super. 382, 448 A.2d 1035 (Ch.Div.1982).
It is further noted that after the initial joint investments were made, all of these investments matured several times over. As each investment matured the proceeds were reinvested in either similar investments with the same institution or switched to similar types of securities. As each investment matured each of them was entitled to, and was the owner of, 50% of the proceeds. Most of the reinvestments listed on “Schedule B” were made after decedent retired and after his wife received social security payments which were added to the investments. I find that 50% of each of these final reinvestments originally belonged to the wife.
*528 Accordingly, it is determined that 50% of the total sum of all jointly owned investments listed in “Schedule B” are exempted from the transfer tax and this portion of the Director’s determination is reversed.[2]
Since it has been established that the balance of decedent’s net estate passes to the wife by operation of law, no part thereof remains to be distributed to the children; therefore, the exemptions claimed for bequests to the children are denied.
The parties will submit computations under R. 8:9-3, or, if they are unable to agree, under R. 8:9-4, following which judgment will be entered.

ITB determined that several bonds had a market value less than that reported by the estate.

It is additionally noted that the Legislature has recently amended N.J.S.A. 54:34-2 whereby transfers of property from a decedent to his or her spouse made on or after January 1, 1985 are no longer subject to New Jersey transfer inheritance tax. In Gibbons v. Gibbons, 86 N.J. 515, 432 A.2d 80 (1981) our Supreme Court, in applying, retroactively, a statutory amendment excluding from equitable distribution non-interspousal gifts received during marriage, held that an ameliorative statute may be interpreted to intend to give retroactive effect where the provision will not result in "manifest injustice” to a party adversely affected by retroactive application. See also Wrightstown Boro v. Medved, 193 N.J.Super. 398, 404-405, 474 A.2d 1077 (App.Div.1984) where such an intention was found in granting retroactive application to a New Jersey constitutional amendment.