VINCENT YONADI AND NANCY YONADI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; MOLLIE E. YONADI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Yonadi v. Commissioner
Docket Nos. 24635-90, 26795-90
United States Tax Court
T.C. Memo 1992-602; 1992 Tax Ct. Memo LEXIS 632; 64 T.C.M. (CCH) 1052; October 8, 1992, Filed *632 Decision will be entered under Rule 155 in docket No. 24635-90. Decision will be entered for petitioner in docket No. 26795-90. For Petitioners in Docket No. 24635-90: Andrew P. Fradkin. For Petitioner in Docket No. 26795-90: Paul J. Ritz. For Respondent: Susan G. Lewis. TANNENWALD
TANNENWALD
MEMORANDUM OPINION TANNENWALD, Judge: In these consolidated cases, respondent determined a deficiency in petitioners Vincent Yonadi (Vincent) and Nancy Yonadis' Federal income tax for 1986 of $ 431,582.00 and additions to tax as follows: Additions to Tax
Sec. 6653(a)(1)(A) [1]
Sec. 6653(a)(1)(B)
Sec. 6661
$ 21,579.00
50 percent of the
$ 107,896.00
interest due on
the deficiency
Respondent determined a deficiency in petitioner Mollie Yonadi's (Mollie) Federal income tax for 1986 of $ 388,420.00 *633 and additions to tax as follows: Additions to Tax
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
Sec. 6661
$ 19,421.00
50 percent of the
$ 97,105.00
interest due on
the deficiency
The principal issue for decision is whether Vincent or Mollie is liable for the capital gains tax [2] attributable to Mollie's interest in a corporation known as VAY, Inc. (VAY), and in a sole proprietorship which operated the Jumping Brook Country Club on land and buildings owned by VAY (sometimes collectively referred to as VAY or the VAY interest), which interest Mollie received pursuant to a property settlement arising out of Vincent and Mollie's divorce in 1982. Disposition of the additions to tax under sections 6653 and 6661 will turn upon our resolution of this issue. [3]
This case was submitted fully *634 stipulated pursuant to Rule 122(a). The stipulation of facts, together with the accompanying exhibits, are incorporated herein by reference. Petitioners Vincent and Nancy Yonadi are husband and wife and resided in Brielle, New Jersey, at the time their petition was filed. They timely filed a joint Federal income tax return for the 1986 taxable year with the Internal Revenue Service Center, Holtsville, New York. Petitioner Mollie Yonadi resided in Boca Raton, Florida, at the time her petition was filed. She timely filed a joint Federal income tax return for the 1986 taxable year with the Internal Revenue Service Center, Holtsville, New York. Vincent was married to Mollie from November 23, 1943, to March 19, 1982, at which time a Judgment for Divorce (judgment) was entered by the Superior Court of New Jersey, Chancery Division. The judgment reflecting the following property settlement between Vincent and Mollie provided in pertinent part: 1. Each of the parties shall waive alimony against the other now and in the future. 2. The defendant [Vincent] shall pay to plaintiff [Mollie] in lieu of alimony and equitable distribution the sum of $ 550,000.00. Of that sum, the wife *635 will loan back to the husband the sum of $ 100,000.00 at an annual interest rate of five percent (5%) payable on a monthly basis. * * * 3. The plaintiff shall also receive a one-third interest in VAY, Inc., which is a corporation of the State of New Jersey which holds land commonly known as Jumping Brook Country Club and Restaurant. This land also includes the buildings and improvements thereon. The plaintiff shall also receive a one-third interest in the business operation of the sole proprietorship known as Vincent J. Yonadi. * * * The interest will be a non-management interest and is solely held for the purposes of receiving the plaintiff's one-third interest at the time the property may be sold. 4. The property shall be sold at the discretion of the defendant so long as he is an active management of that place. In the event the defendant at any time is not in active management then a sale shall take place. The defendant, prior to any sale and during the time that he is in active management, may receive all of the funds from the operation of Jumping Brook Country and VAY, Inc., respectively. He shall be responsible, however, to pay all expenses in connection with the *636 sole proprietorship and the aforesaid corporation. * * * 5. In the event that Jumping Brook Country Club and/or the corporation shall be sold, the plaintiff shall receive one-third of the net selling price less the sum of $ 500,000.00. The net selling price shall be defined as the gross selling price of the complete complex including the Restaurant, golf course, land and buildings, cite [sic] improvements, less normal expenses of closing and less any existing mortgages on the property. It is also understood that if the property is sold prior to the repayment of the $ 100,000.00 loan that the plaintiff is making to the defendant, then said $ 100,000.00 loan shall be paid in full at that time. * * * 7. The defendant shall not further encumber the premises without the consent of the plaintiff which consent shall not be unreasonably withheld. At the hearing accompanying the entry of the judgment, the following exchange between Mr. Donahue (Vincent's attorney) and Mr. Abrams (Mollie's attorney) took place: MR. DONAHUE: * * * Just a few matters by way of clarification. I don't believe I have any more additions. The one-third ownership that Mrs. Yonadi will have is not an active *637 ownership. The ownership takes effect in essence upon the sale of the property when she receives her interest in it. Mr. Yonadi will operate the business without any interference from Mrs. Yonadi until such time as a sale occurs, or he no longer is involved in it. THE COURT: I guess what you are really saying, she has a one-third beneficial interest at the time that the property is sold. Is that right, Mr. Abrams? MR. ABRAMS: I thought it was going to be a legal interest. THE COURT: She has a vested interest, it is vested beneficial interest now and to be paid out at the time that it is sold. How does that language sound to you? MR. ABRAMS: I want to make sure that we have legal title, more than just a beneficial interest. It is inactive, and we agree, and we will not interfere with the operation. But, it is our understanding that it has to be a legal interest, not just a beneficial interest, to be turned over when it is sold. That is all. MR. DONAHUE: I agree with that. I concur with that. On May 7, 1982, Mollie filed a Post Judgment Notice of Motion (1982 motion) requesting, among other things, that (1) one-third of the VAY stock be transferred to her, and (2) Vincent *638 execute partnership papers in respect of the sole proprietorship making Mollie a one-third partner in that business. A certification, submitted by Mollie in support of the motion, stated: It was my understanding that I was to have a legal interest in V.A.Y. Inc., and also a legal interest in the partnership known as Vincent A. Yonadi, trading at Jumping Brook Country Club. I have ordered a copy of the transcript and my recollection is absolutely correct * * * Mollie's motion was denied, although the court permitted Mollie to "record the judgment with any and all deeds on the property" to protect her VAY interest. The court further ordered Vincent to notify Mollie "at least 60 days in advance of any intention to transfer or dissolve either VAY, Inc. or the sole proprietorship," and to hold the proceeds from any such transfer or dissolution a minimum of 30 days after their receipt. VAY was a New Jersey corporation formed by Vincent in 1970. Vincent's basis in the VAY stock was $ 300,000. On or about December 17, 1970, VAY acquired certain property located in Neptune, New Jersey, for a purchase price of $ 1,025,000. Upon the acquisition of the property, VAY invested an additional *639 $ 950,000 for capital improvements to the land, buildings, and other structures located on the property. Commencing in December 1970, and continuing at all times until December 1986, VAY owned the real property on which Vincent operated a golf club and restaurant facility known as Jumping Brook Country Club (Jumping Brook). Jumping Brook was operated by Vincent through his sole proprietorship. A resolution approving the liquidation of VAY pursuant to section 337 was adopted by the director and shareholder of VAY, namely, Vincent Yonadi, on December 3, 1986. On December 23, 1986, VAY sold all of its assets to Heritage Village at Jumping Brook (Heritage). Simultaneously, all assets of the sole proprietorship were acquired by Heritage. The total purchase price was $ 6,200,000. Proceeds from the sale were placed in escrow pending an agreement between Vincent and Mollie in respect of the amount each party was entitled to receive under the judgment. The escrow agreement was amended on December 31, 1986, due to a continuing disagreement between Mollie and Vincent over which party was to pay the capital gains taxes attributable to Mollie's VAY interest. At that time, all proceeds *640 from the sale were distributed, [4] except for $ 580,000 which was to remain in escrow until the parties reached an agreement in respect of the capital gains tax attributable to the proceeds of the sale distributed in the liquidation of VAY. Pursuant to a Notice of Motion To Distribute Trust Funds (1987 motion) dated May 26, 1987, Mollie requested that the Superior Court of New Jersey, Chancery Division, distribute the remaining funds, namely the $ 580,000 remaining in escrow, in accordance with the prior divorce judgment. Following a hearing in respect of the motion, the remaining proceeds were distributed to Mollie and Vincent pursuant to an order issued by the Superior Court on April 8, 1988. [5] At that time, Mollie and Vincent were still at odds as to responsibility for the capital gains taxes. *641 Neither the judgment, the order denying the 1982 motion, nor the order disposing of the 1987 motion made any reference to the capital gains taxes in respect of the sales proceeds, payable by either Mollie or Vincent. Although the problem of responsibility for such taxes was the subject of discussion in connection with the settlement negotiations leading to the 1982 property settlement, neither Vincent nor Mollie reported the 1986 gain attributable to Mollie's VAY interest. Respondent concedes that such gain is not taxable to both Vincent and Mollie and is thus essentially a stakeholder although we note that, on brief, respondent indicates agreement with Vincent's position that Mollie and not he is liable for the tax on such gain. The principal issue for decision is whether Vincent or Mollie is properly taxable on the capital gain attributable to Mollie's VAY interest. In this connection, we note that our task is to determine who is liable vis-a-vis the U.S. Government for the capital gains tax attributable to Mollie's VAY interest. Cf. Pesch v. Commissioner, 78 T.C. 100, 129 (1982). We are not called upon to determine the ultimate responsibility *642 for such tax as between Mollie and Vincent. That is a problem for them to resolve either by agreement or litigation in another forum. Moreover, we note that the attitudes of Mollie and Vincent have shifted depending upon the occasion. Thus, at the time of the 1982 hearings, Mollie seems to have been seeking a full ownership interest which Vincent was resisting, while at the time of the 1986 sale and Mollie's 1987 motion to distribute the escrow funds, their positions were reversed. Resolution of the issue of liability for the capital gains tax attributable to Mollie's VAY interest turns upon the nature of the interest Mollie received pursuant to the 1982 judgment. In our view, there are two possibilities in this respect: (1) Mollie received only an interest in the proceeds from any future sale of VAY, i.e., a nonownership interest, in which case Vincent is taxable on the entire capital gain (Mollie's position) or (2) Mollie received an ownership interest in VAY, either by "equitable distribution", N.J. Stat. Ann. sec. 2A:34-23 (West 1987), [6] or in exchange for the release of her marital rights, in which case Mollie is taxable on the gain attributable to her VAY interest. *643 In all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage. * * * Initially, it is important to keep in mind that this is not the usual case where the dispute involved whether a settlement effectuated a sale or a division of property. In such cases, it was clear that the spouse received an ownership interest in marital property and the question before the courts was, therefore, not "what" was received but "how" it was received. E.g., Bosch v. United States, 590 F.2d 165 (5th Cir. 1979); Imel v. United States, 523 F.2d 853 (10th Cir. 1975); McIntosh v. Commissioner, 85 T.C. 31 (1985); Serianni v. Commissioner, 80 T.C. 1090 (1983), affd. 765 F.2d 1051 (11th Cir. 1985). The issue herein is "what" did Mollie receive. If we decide that all she *644 received was money or a promise to pay money, then she did not receive an ownership interest in the marital property and those cases (which are heavily relied upon by Vincent) are not in point. For the reasons hereinafter set forth, we hold that such was the case. We are satisfied that, under section 2A:34-23, N.J. Stat. Ann. (West 1987), see supra note 6, the New Jersey courts are permitted, in a divorce proceeding, to order an "equitable distribution" of marital property in terms of payment of money only, as well as by way of an actual division of the marital property. E.g., Bowen v. Bowen, 96 N.J. 36, 473 A.2d 73 (1984); Gibbons v. Gibbons, 174 N.J. Super. 107, 415 A.2d 1174 (1980), revd. on other grounds 86 N.J. 515, 432 A.2d 80 (1981). While we have found no case in which the award was not in a fixed amount, we are satisfied that the authority of the trial judge under the New Jersey statute is sufficiently broad to permit the award of a payment of money contingent as to time and amount, particularly where, as is the case herein, a valuable *645 closely held business is involved. Thus, in dealing with such a situation and the attendant valuation problems, the New Jersey Superior Court has stated: We are thus satisfied from our review of the record that the business interest is not without value. What its value is, what plaintiff's allocated share thereof should be, and the manner in which she should receive that share will have to be determined on the remand. [Lavene v. Lavene, 148 N.J. Super. 267, 372 A.2d 629, 632 (1977); emphasis added.] Under the judgment, see supra p. 4, Vincent was given full authority to continue to operate VAY and the sole proprietorship as he saw fit and absolute control (other than dying or deciding to leave the businesses) of the manner, timing, and price and terms of their sale. A significant provision of the judgment stated: "This interest [Mollie's] will be a non-management interest and is solely held for the purposes of receiving the plaintiff's [Mollie's] one-third interest at the time the property may be sold." (Emphasis added.) The colloquy between counsel for Mollie and Vincent and the Chancery Court, see supra pp. 5-6, *646 in which it appears that Mollie was considered to have a "legal interest" does not resolve the question before us because it does not define the nature of that interest. Our view is that Mollie's "legal interest" was nothing more than an interest sufficient to assure her ability to claim a share of the proceeds of sale of the businesses at a later date. In short, the phrase encompassed an interest in the nature of collateral security for Vincent's promise of future payment. The subsequent action by the Chancery Court in denying Mollie's motion [7] to transfer to her one-third of the VAY shares and turn the sole proprietorship into a partnership confirms our view that Mollie's "legal interest" did not achieve the status of an ownership interest. We are unimpressed by the fact that the *647 notes of counsel for Mollie and Vincent seem to reflect different views as to the role of the capital gains taxes in the 1982 property settlement. This difference does no more than cloud the issue as to who is responsible for the capital gains taxes as between Mollie and Vincent, an issue that is not within the purview of this case. See supra p. 10. Nor do we attach any significance to the statement of the presiding judge at the time of the hearing on the 1987 motion, that the 1982 judgment granting Mollie a one-third share of the proceeds of sale "was to be an equitable distribution"; the judge's statement does not articulate the characterization of that distribution in respect of ownership of the marital property. Similarly, we are not impressed with Vincent's argument based on the fact that Mollie would share in any appreciation in the value of the businesses. To be sure, that element is taken into account in evaluating whether a person has the benefits and burdens of ownership, but it clearly does not itself create ownership and we do not believe that, under the circumstances herein, there are other considerations which should cause us to attach any significance to this *648 element. Finally, the fact that Mollie could force a sale of the businesses if Vincent was not in active management or that Vincent could not further encumber the premises of the businesses without Mollie's consent does not create an ownership interest. These provisions represent nothing more than protection normally accorded a person with an interest held as collateral security. In sum, we hold that, as far as the U.S. Government is concerned, Vincent and not Mollie is liable for the entire capital gains tax in respect of the proceeds of sale of VAY, and the sole proprietorship, and the distribution of those proceeds in liquidation of VAY. As a consequence of this holding, respondent's determination of a deficiency and additions to tax against Mollie falls by the wayside. Decision will be entered under Rule 155 in docket No. 24635-90.
Decision will be entered for petitioner in docket No. 26795-90. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. There is a potential issue relating to the recapture tax under sec. 1245 which, to the extent necessary, can be resolved under Rule 155. ↩
3. In any event, respondent has conceded the additions to tax in respect of Vincent.↩
4. Mollie received $ 1,250,000 and Vincent received $ 3,900,000. ↩
5. In July 1988, Mollie received $ 344,704, making a total distribution of $ 1,994,000 to her from the sale proceeds.↩
6. Sec. 2A:34-23, N.J. Stat. Ann.↩ (West 1987), reads in pertinent part:
7. The same judge acted on this motion and rendered the earlier judgment. We note that the record indicates that the judge actively participated in the development of the agreed property settlement that was reflected in the judgment.↩