21 F.3d 1292
 73 A.F.T.R.2d 94-1713, 62 USLW 2687, 94-1
USTC P 50,183
 Vincent YONADI and Nancy Yonadi, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE,
Mollie E. YONADI,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Appellant,
Vincent Yonadi and Nancy Yonadi (Appellants in No. 93-7353),
Commissioner of Internal Revenue Service (Appellant in No. 93-7354).
 Nos. 93-7353 & 93-7354.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 12, 1994.
Decided April 14, 1994.
 
 Andrew P. Fradkin (argued), Bruce E. Goldman, Goldman, Jacobson, Kramer Fradkin & Starr, P.C., Roseland, NJ, for appellants Vincent and Nancy Yonadi.
 Mollie E. Yonadi, appellee, no appearance.
 Gary R. Allen, David English Carmack (argued), Janice B. Geier, Dept. of Justice, Tax Div., Washington, DC, for C.I.R.
 Before: STAPLETON, COWEN and ALITO, Circuit Judges.
 OPINION OF THE COURT
 COWEN, Circuit Judge:
 
 
 1
 Vincent Yonadi (Vincent) and Nancy Yonadi appeal from a United States Tax Court order determining a deficiency in their federal income tax due for 1986. The Tax Court held that Vincent was liable for the capital gains tax attributable to the portion of the sale proceeds of certain appreciated assets distributed to his former wife, Mollie E. Yonadi (Mollie), pursuant to a divorce settlement agreement entered under New Jersey state law. The Commissioner of Internal Revenue (Commissioner) appeals from a separate order of the Tax Court holding that Mollie was not liable for the tax. A stakeholder entitled to tax from either Vincent or Mollie, the Commissioner asks us to affirm both or reverse both orders. We conclude that Mollie received an ownership interest in the appreciated assets upon her divorce. She therefore must pay taxes on the appreciation realized. We will reverse both orders.
 
 I.
 
 2
 For thirty-eight years Vincent and Mollie were husband and wife. That long union came to an end on March 19, 1982, when the Superior Court of New Jersey entered a judgment of divorce (the judgment). Incident to the divorce, Vincent and Mollie divided their marital property pursuant to an agreement between them. This agreement was incorporated as part of the judgment. At issue in this case are the tax consequences of the division and subsequent sale of the ownership of VAY, Inc. (VAY) and a sole proprietorship doing business as Vincent A. Yonadi (together the "VAY assets").
 
 
 3
 VAY was formed in 1970 by Vincent as a New Jersey corporation. The stock had a basis of $300,000. Shortly afterwards VAY bought land and certain buildings in Neptune, New Jersey and improved the property into a thriving country club, commonly known as Jumping Brook Country Club and Restaurant. Vincent also formed a sole proprietorship doing business as Vincent A. Yonadi to operate the restaurant and golf course on the VAY property. The judgment dividing the marital property provided, in part:
 
 
 4
 3. The plaintiff [Mollie] shall also receive a one-third interest in VAY, Inc., which is a corporation of the State of New Jersey which holds land commonly known as Jumping Brook Country Club and Restaurant. This land also includes the buildings and improvements thereon. The plaintiff shall also receive a one-third interest in the business operation of the sole proprietorship known as Vincent J. Yonadi.... The interest will be a non-management interest and is solely held for the purposes of receiving the plaintiff's one-third interest at the time the property may be sold.
 
 
 5
 4. The property shall be sold at the discretion of the defendant [Vincent] so long as he is [in] active management of that place. In the event the defendant at any time is not [in] active management then a sale shall take place. The defendant, prior to any sale and during the time that he is in active management, may receive all of the funds from the operation of Jumping Brook Country [Club] and VAY, Inc., respectively. He shall be responsible, however, to pay all expenses in connection with the sole proprietorship and the aforesaid corporation. Said expenses would include all incidental expenses in connection with the operation of the two business including mortgage, taxes, principal, utilities, repairs and maintenance. The defendant shall indemnify and hold the plaintiff harmless from any obligations in the operation of [the VAY assets].
 
 
 6
 5. In the event that Jumping Brook Country Club and/or the corporation shall be sold, the plaintiff shall receive one-third of the net selling price less the sum of $500,000.00....
 
 
 7
 . . . . .
 
 
 8
 7. The defendant shall not further encumber the premises without the consent of the plaintiff which consent shall not be unreasonably withheld.
 
 
 9
 App. at 74-75.
 
 
 10
 Vincent was anxious to retain control over the country club, while Mollie was eager to ensure that she would receive a "legal interest." At the hearing on the entry of the judgment, the following colloquy took place:
 
 
 11
 MR. DONAHUE [counsel for Vincent]: ... Just a few matters by way of clarification. I don't believe I have any more additions[.] The one-third ownership that Mrs. Yonadi will have is not an active ownership. The ownership takes effect in essence upon the sale of the property when she receives her interest in it. Mr. Yonadi will operate the business without any interference from Mrs. Yonadi until such time as a sale occurs, or he no longer is involved in it.
 
 
 12
 THE COURT: I guess what you are really saying, she has a one-third beneficial interest at the time that the property is sold. Is that right, Mr. Abrams?
 
 
 13
 MR. ABRAMS [counsel for Mollie]: I thought it was going to be a legal interest.
 
 
 14
 THE COURT: She has a vested interest, it is [a] vested beneficial interest now and to be paid out at the time that it is sold. How does that language sound to you?
 
 
 15
 MR. ABRAMS: I want to make sure that we have legal title, more than just a beneficial interest. It is inactive, and we agree, and we will not interfere with the operation. But, it is our understanding that it has to be a legal interest, not just a beneficial interest, to be turned over when it is sold. That is all.
 
 
 16
 MR. DONAHUE: I agree with that. I concur with that.
 
 
 17
 App. at 87-88.
 
 
 18
 Not satisfied with this, Mollie subsequently filed a post-judgment motion in May 1982 to request that (1) one-third of the VAY stock be transferred to her, and (2) Vincent execute partnership papers in respect of the sole proprietorship making Mollie a one-third partner in that business. The reason she gave was that under the agreement she would receive a "legal interest." The court denied her motion but permitted her to record the judgment with any and all deeds on the property to protect her interest in the VAY assets. The court ordered Vincent to notify Mollie at least 60 days in advance of any intention to transfer or dissolve either VAY, Inc. or the sole proprietorship, and to hold the proceeds from any such transfer or dissolution for a minimum of 30 days after their receipt.
 
 
 19
 In 1986 Vincent effected a sale of all the assets of VAY and the sole proprietorship for a total of $6,200,000, realizing a substantial amount of capital gain. Vincent and Mollie disagreed as to who should pay the capital gains tax on the gain attributable to Mollie's one-third interest in the sale proceeds. They attempted in vain to resolve the dispute. The last dollar of the sale proceeds was distributed pursuant to the judgment of divorce on April 8, 1988, without an agreement as to who would pay the capital gains tax at issue. None of the New Jersey state court orders specified whose responsibility it was to pay the capital gains tax on the appreciation in Mollie's one-third interest in the VAY assets upon liquidation. In their federal tax returns, neither Vincent nor Mollie reported the capital gain in dispute, each with a view that it was the responsibility of the other.
 
 
 20
 The Tax Court held that Mollie did not receive an ownership interest in the VAY assets and was not liable for the capital gains tax attributable to her interest. Yonadi v. Commissioner, 64 T.C.M. (CCH) 1052, 1054 (1992). The Tax Court appeared to characterize Mollie's interest as an "award of a payment of money contingent as to time and amount." Id. at 1055. According to the Tax Court, the statements made on behalf of Mollie regarding her "legal interest" during the hearing on the entry of the judgment of divorce did nothing more than "encompass[ ] an interest in the nature of collateral security for Vincent's promise of future payment." Id. at 1056. Characterizing Mollie's interest as a non-ownership interest, the Tax Court ruled that Vincent must pay capital gains tax on all the appreciation in the VAY assets, although he received only two-thirds of the sale proceeds before tax pursuant to the judgment of divorce. These consolidated appeals followed. The Tax Court had jurisdiction pursuant to Secs. 6213, 6214 and 7422 of the Internal Revenue Code (I.R.C.). We have appellate jurisdiction pursuant to I.R.C. Sec. 7482.
 
 II.
 
 21
 Individuals are taxed on "all income from whatever source derived." I.R.C. Sec. 61(a). Dealings in property qualify as "whatever source" and gains realized from such dealings certainly constitute "income." Id. Secs. 61(a)(3), 1001(a), (b), (c). Accordingly, there is no dispute that either Vincent or Mollie is liable for the capital gains tax attributable to Mollie's one-third interest in the VAY assets. The dispute is which of the two must pay the capital gains tax. As the owner reaps the gain and shoulders the loss from a sale or exchange of property, the resolution of this question turns on whether, for federal income tax purposes, Vincent or Mollie was the true owner of Mollie's one-third interest in the VAY assets. If we conclude that Mollie's interest was an ownership interest, a second question to be decided is whether the basis for her interest is the market value of her interest at the time of divorce in 1982 or the adjusted basis for her interest.
 
 A.
 
 22
 "[F]ederal income tax liability follows ownership. In the determination of ownership, state law controls." United States v. Mitchell, 403 U.S. 190, 197, 91 S.Ct. 1763, 1768, 29 L.Ed.2d 406 (1971) (citations omitted). Property interests and rights are created by and exist under state law. Morgan v. Commissioner, 309 U.S. 78, 80-81, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940). How these interests and rights shall be taxed is determined by federal law. Id. In making such a determination, we look to the substance of the rights created, rather than the names given to the interests and rights by the parties or the state courts. See id. These principles will guide us in deciding whether Mollie's one-third share in the VAY assets is an ownership interest.
 
 
 23
 New Jersey is an equitable distribution state. N.J.Stat.Ann. Sec. 2A:34-23 (West 1987 & Supp.1993). The essence of equitable distribution is its recognition of the contribution of each former spouse to the accumulation of property during marriage. Rothman v. Rothman, 65 N.J. 219, 320 A.2d 496, 501-02 (1974). When distributing marital property upon a divorce, New Jersey courts have the power to grant an actual (though not necessarily physical) division of property or a payment of money. N.J.Stat.Ann. Sec. 2A:34-23 (West 1987 & Supp.1993) (equitable distribution); Bowen v. Bowen, 96 N.J. 36, 473 A.2d 73, 76 (1984) (to prevent future strife, payment of money should be awarded instead of shares in a corporation with former husband in complete control). Obviously, when the state court grants an actual division of property, each of the former spouses will be the owner of his or her share after the divorce. When the state court grants a payment of money in lieu of dividing the property, the payer will be the owner of that former marital property after the divorce. The payee will have no ownership interest in that property.
 
 
 24
 We must decide what interest the 1982 judgment of divorce actually created for Mollie. The Tax Court essentially characterized the judgment of divorce in this case as granting, not an actual division of marital property, but rather a "payment of money contingent as to time and amount." Yonadi, 64 T.C.M. (CCH) at 1055. It treated the property as collateral to secure payment. We disagree. We conclude that Mollie's interest in the VAY assets was created as an ownership interest.
 
 
 25
 As set forth above, the judgment explicitly provided that Mollie "shall ... receive a one-third interest in VAY, Inc.," App. at 74, and "a one-third interest in the business operation of the sole proprietorship," id. A common sense reading of this language and the entire judgment leads to the conclusion that the judgment contemplated an actual division of marital property upon the divorce. The term "interest" in the judgment meant "ownership interest." We believe if one receives a "one-third interest" in a corporation, the term "interest" generally means "ownership interest" unless otherwise specified by explicit language. To create a security interest in the shares of stock in VAY, more explicit language was needed. Accordingly, Vincent and Mollie were co-owners, though not in equal share, of the VAY assets.
 
 
 26
 Treating Mollie's interest as a non-ownership interest and thereby excusing her from the capital gains tax liability would defeat the scheme of equitable distribution and conflict with the purpose of the 1982 divorce judgment. The scheme of equitable distribution embodied in the judgment convinces us that Mollie received an ownership interest. The judgment resulting from an agreement between Vincent and Mollie contemplated an ownership interest for Mollie. The VAY assets were the primary marital assets of the former couple. The record reflected that Vincent made a larger contribution to the acquisition and improvement of these assets than Mollie. The judgment made under the equitable distribution powers of the New Jersey state court was intended to recognize the different contributions of the former spouses and thus contemplated granting a two-thirds interest to Vincent and a one-third interest to Mollie. If we were to determine that Mollie received no ownership interest, and thus shoulders no tax liability, she would receive approximately 42% of the after-tax proceeds, while Vincent would receive only approximately 58%. See Brief for Vincent and Nancy Yonadi at 26 & n. 14. This could not have been contemplated by either Vincent, Mollie or the New Jersey state court that entered the judgment.
 
 
 27
 New Jersey case law indicates that such a substantial tax liability, if placed solely on one party, would have been considered when the court exercised its equitable distribution powers. New Jersey state courts had considered tax consequences in several cases before the court in this case entered the judgment of divorce in 1982, see Stern v. Stern, 66 N.J. 340, 331 A.2d 257, 261 (1975) (tax obligations were a relevant consideration in determining whether a distribution was equitable); Painter v. Painter, 65 N.J. 196, 320 A.2d 484, 493 (1974) ("Where ... the court is called upon to exercise its powers [of equitable distribution], it will not be improper for a judge to give appropriate heed to legitimate tax considerations"); Tucker v. Tucker, 121 N.J.Super. 539, 298 A.2d 91, 97 (1972) (former spouse to participate in income "subject to income and any other taxes in her hands"), and have done so since 1982, see Dugan v. Dugan, 92 N.J. 423, 457 A.2d 1, 10 (1983) ("potential federal tax consequences should be considered in determining equitable distribution"); Orgler v. Orgler, 237 N.J.Super. 342, 568 A.2d 67, 74 (1989) ("although hypothetical tax consequences should not reduce the present value of marital assets, such a consideration ... has an important place in the equitable distribution process"). In 1988, the New Jersey legislature amended the equitable distribution statute to direct the courts to consider tax consequences. N.J.Stat.Ann. Sec. 2A:34-23.1j (West Supp.1993).
 
 
 28
 The judgment of divorce granted Mollie a one-third interest in the VAY assets and stated that she was to receive one-third of the proceeds of the sale of those assets. The language of the judgment made it clear that the value of Mollie's interest would thus fluctuate with the value of the VAY assets. Accordingly, Mollie, not Vincent, would bear the burdens and harvest the benefits derived from her one-third interest in the VAY assets. She alone would be saddled with any depreciation in the value of her interest. The Tax Court acknowledged these characteristics of Mollie's interest, but discounted their significance in the determination of whether her interest was an ownership interest. See Yonadi, 64 T.C.M. (CCH) at 1056. These are two of the most important indicia of ownership. For example, New Jersey law recognizes that sharing profits of a business is prima facie evidence of partnership and thus co-ownership of the business. N.J.Stat.Ann. Secs. 42:1-7(4), 42:1-6(1). More importantly, Mollie would bear the losses attributable to her share. Sharing losses of a business is one of the most important indicia of a partnership (and thus co-ownership) status. See Cornell v. Redrow, 60 N.J.Eq. 251, 47 A. 56, 57 (N.J.Ch.1900) (despite an agreement to share profits in a business, no partnership found because no agreement to share losses).
 
 
 29
 The colloquy that took place during the hearing for the entry of the judgment made it abundantly clear that ownership interest was contemplated. Counsel for Mollie insisted that Mollie received a "legal interest," and counsel for Vincent concurred. We need not detain ourselves for long on any possible distinction in the word choice between "legal interest" and "ownership interest." We are satisfied that they meant the same thing in the minds of the state court, Vincent, and Mollie: ownership.
 
 
 30
 We do not believe Mollie's interest created by the judgment can be construed to mean a promise to make a "payment of money contingent as to time and amount," Yonadi, 64 T.C.M. (CCH) at 1055, secured by the VAY assets as collateral. It is difficult to envisage a marital property settlement as a promise to make a "payment of money contingent as to time and amount," where the amount is not certain or calculable. The Tax Court acknowledged that it could not find any instance where a New Jersey court or other state court awarded such a marital property settlement.
 
 
 31
 The Tax Court based its characterization of Mollie's interest on the restrictions that the judgment placed on Mollie's interest and the language that her interest "will be a non-management interest and is solely held for the purposes of receiving [Mollie's] one-third interest at the time the property may be sold." Id. at 1056 (quoting the state court judgment of divorce) (emphasis added by the Tax Court). The judgment granted Vincent complete control in the management and the manner, timing, price and terms of any sale of the VAY assets, except that in the event he died or decided to leave the business, Mollie could force a sale. We do not believe such restrictions and the language in the judgment defeated any ownership interest of Mollie. These factors, read in the context of the entire judgment, only served to preserve Vincent's control of the business while at the same time safeguarding Mollie's ownership interest.
 
 
 32
 Control of property is no doubt an important indicia of ownership, but it is not the only one. Under many circumstances, owners readily delegate control and management of property to persons more able than the owners themselves in order to maximize economic gain or achieve other purposes. For example, corporate shareholders may appoint an agent to vote their shares or otherwise represent them. See N.J.Stat.Ann. Sec. 14A:5-20 (West Supp.1993) (voting trusts). Partners may delegate management of their partnership business to one of the partners or even a non-partner. Cf. Wilzig v. Sisselman, 182 N.J.Super. 519, 442 A.2d 1021, 1029 (1982). We have no doubt that such delegation does not, in and of itself, defeat ownership interest. Rather, the right to delegate management is part and parcel of the many rights of ownership.
 
 
 33
 Delegation of control and management is what the 1982 judgment of divorce in essence provided. The restrictions on Mollie's interest served to delegate management of Mollie's interest to Vincent and to secure management of Vincent's own interest by himself, in recognition of the business acumen of Vincent. Indeed, if Vincent's work and skills were not available (either because he decided to leave the business or in the event of his death), the judgment provided that Mollie could force a sale of the assets. Requiring Mollie to take control of the business might not be in the best interest of her one-third ownership interest in VAY, as well as Vincent's two-thirds ownership. Accordingly, we conclude that the restrictions did not adversely affect Mollie's ownership. Rather, they improved the prospects of profits from her ownership. See Kenfield v. United States, 783 F.2d 966, 969 (10th Cir.1986) (control vested in former husband and former wife's deferred right to receive proceeds do not defeat the ownership interest of former wife in one-half of the former husband's interest in a partnership).
 
 
 34
 In so concluding, we are not unaware of language of the Supreme Court emphasizing "command over the property." Commissioner v. Sunnen, 333 U.S. 591, 604-05, 68 S.Ct. 715, 722-23, 92 L.Ed. 898 (1948) ("taxation is not so much concerned with the refinements of title as it is with the actual command over the property taxed--the actual benefit for which the tax is paid" (internal quotation marks and citations omitted)). We do not read that language as requiring an owner to assert physical control over or personally manage the property at issue. Rather, the Supreme Court was focusing on who has command over the receipt of income and who has control over where the benefit is going. Id. at 604-607, 68 S.Ct. at 722-23. In the case sub judice, there is no dispute that the benefit derived from Mollie's one-third interest accrued only to Mollie and she alone had the power to dispose of it.
 
 
 35
 We do not believe the state court's denial of Mollie's motion for transfer of shares of VAY stock and executing a partnership agreement in respect of the sole proprietorship defeated her ownership interest in the VAY assets. These title papers and the partnership agreement if executed would have been evidence of ownership, but their absence is not fatal to proving ownership. See id. ("taxation is not so much concerned with the refinements of title" (internal quotation marks and citations omitted)). The state court more likely denied Mollie's motion for reasons other than questions of ownership. We are satisfied that New Jersey law does not require strict compliance with the formalities of stock ownership registration in order to recognize ownership interest. See, e.g., Fox v. Frame, 137 N.J.Eq. 177, 44 A.2d 38, 39 (1945) (claimant's ownership of one share of stock was recognized although it was not issued to him or registered in his name). Cf. American Hardware Mut. Ins. v. Muller, 98 N.J.Super. 119, 236 A.2d 182, 186-87 (1967) (the true owner of an automobile may be one other than the registered owner), aff'd, 103 N.J.Super. 9, 246 A.2d 493 (App.Div.), certif. denied, 53 N.J. 85, 248 A.2d 437 (1968).
 
 
 36
 Accordingly, we conclude that Mollie received an ownership interest in one-third of the VAY assets under the 1982 judgment of divorce and must pay capital gains tax attributable to that interest.
 
 B.
 
 37
 We now consider what is the basis of Mollie's interest for federal income tax purposes. The answer to this question turns on whether the grant of interest to Mollie in the judgment of divorce was a taxable transfer by Vincent (in which event Mollie's basis would be the fair market value of her interest in 1982), or a non-taxable division of existing property co-owned by Vincent and Mollie (in which event Mollie's basis would be the carry-over basis equal to the adjusted basis in the interest before the transfer).
 
 
 38
 Congress decreed in 1984 that no gain or loss shall be recognized on a transfer of property from an individual to a former spouse incident to a divorce. I.R.C. Sec. 1041. The transferee takes a carry-over basis in the property equal to the adjusted basis of the transferor. Sec. 1041(b). Prior to that, such transfers were subject to disparate treatment for federal income tax purposes, depending upon how relevant state law treated the rights of the former spouse. Compare United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 1193, 8 L.Ed.2d 335 (1962), with Bosch v. United States, 590 F.2d 165, 166-68 (5th Cir.1979), cert. denied, 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980). The transfer at issue in this case was made in 1982 (before the enactment of Sec. 1041), and its treatment turns on how New Jersey law characterized Mollie's rights in marital property before the divorce.
 
 
 39
 The seminal case that resulted in the disparate treatment of property transfers incident to a divorce is United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962). In Davis, the Supreme Court held that the transfer of appreciated property by a former husband to his former wife under Delaware law constituted a transfer of property taxable to the husband under the tax code, rather than a non-taxable division of property co-owned by the former couple. Id. at 69-71, 82 S.Ct. at 1192-94. The reason was that under Delaware law the wife did not own any of the property before the divorce. The transfer was made in exchange for the release of the husband's independent liability. In the words of the Court, "the inchoate rights granted a wife in her husband's property by the Delaware law do not even remotely reach the dignity of co-ownership." Id. at 70, 82 S.Ct. at 1193. The Court emphasized that the wife's rights "might be ascertained independently of the extent of the husband's property by such criteria as the wife's financial condition, her needs in relation to her accustomed station in life, her age and health, the number of children and their ages, and the earning capacity of the husband." Id. The Court further held that the wife's basis in the transferred property would be its fair market value on the date of transfer to her. Id. at 73, 82 S.Ct. at 1195.
 
 
 40
 The corollary of the rationale of Davis was subsequently held to be true by several courts of appeals. That is, if the former wife's right in the marital property under state law does "reach the dignity of co-ownership," id. at 70, 82 S.Ct. at 1193, then the transfer is a non-taxable division of existing property held by co-owners, and the transferee receives a carry-over basis in the property equal to the adjusted basis before the transfer. Bosch v. United States, 590 F.2d 165, 167-67 (5th Cir.1979) (applying Florida law), cert. denied, 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980). See also Kenfield v. United States, 783 F.2d 966, 969-70 (10th Cir.1986) (applying Colorado law); Collins v. Commissioner, 412 F.2d 211, 211-12 (10th Cir.1969) (applying Oklahoma law).
 
 
 41
 We therefore examine New Jersey law to ascertain the status of Mollie's right to the VAY assets. Until the New Jersey legislature enacted the equitable distribution statute in 1971, a grant of alimony was the sole source of future support for a divorced wife. See Rothman v. Rothman, 65 N.J. 219, 320 A.2d 496, 501 (1974). The enactment of the equitable distribution statute "seeks to right what many have felt to be a grave wrong." Id. The essence of equitable distribution is to recognize the essential supportive role of the wife and her entitlement to a share of family assets accumulated during the marriage. Id. According to the New Jersey Supreme Court, "the division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership." Id. In contrast to the divorced wife in Davis whose right may be determined partly or wholly by her need, see Davis, 370 U.S. at 70, 82 S.Ct. at 1193, a New Jersey divorced wife receives her property "not because share is needed but because those assets represent the capital product of what was essentially a partnership entity." Gibbons v. Gibbons, 174 N.J.Super. 107, 415 A.2d 1174, 1177, (1980), rev'd on other grounds, 86 N.J. 515, 432 A.2d 80 (1981).
 
 
 42
 The equitable distribution doctrine reflects the proposition that the divorced spouse receives a share of property not on the basis of need or as a release of the other spouse's liability, but rather, merely takes title to what was already owned in theory. This has found application in New Jersey case law that addresses the tax consequences of the property interests of a former spouse. In Rand v. Director, 9 N.J.Tax 519 (1988), the New Jersey Tax Court concluded that under the equitable distribution doctrine the wife had ownership interest in a joint account with her husband before he died and, therefore, she only inherited her husband's half interest in the account and should pay an inheritance tax only on that portion. Id. at 525-27. If the husband owned 100% of the account, the wife would have to pay an inheritance tax on the whole amount. We recognize that the New Jersey Tax Court in Rand held that the wife should have the tax benefits attendant to her ownership. We believe, however, that the New Jersey state courts would likewise hold that the wife should shoulder the tax burdens in an appropriate case. This result was reached by the Chancery Division of the Superior Court of New Jersey in Tucker v. Tucker, 121 N.J.Super. 539, 298 A.2d 91, 97 (1972), without discussion. The Chancery Division in Tucker granted the former wife the right to participate in the proceeds of the stock units and cash credits under an incentive compensation, "subject to income and any other taxes in her hands." Id. This result was the exact conclusion that the Court of Appeals for the Tenth Circuit reached in Kenfield v. United States, 783 F.2d 966, 969-70 (10th Cir.1986). The court in Kenfield held that the Colorado former wife who received half of her former husband's partnership interest is liable for the income tax on that half interest as she received it. Id.
 
 
 43
 The New Jersey equitable distribution statute and case law convince us that Mollie's interest is qualitatively different from that of the Delaware former wife in Davis. We conclude that Mollie's interest resulted from a division of property that can be characterized as already co-owned by her and Vincent before the divorce. As a result, the grant of an interest to her was a transfer not taxable to Vincent upon divorce. Accordingly, Mollie's basis in her interest is not the fair market value of her interest at the time the judgment of divorce was entered, but rather the carry-over basis equal to the adjusted basis in her interest before divorce.
 
 III.
 
 44
 For the foregoing reasons, we hold that Mollie (rather than Vincent) is liable for the capital gains tax on the appreciation realized upon the sale of her one-third interest in the VAY assets. Mollie's basis is the carry-over basis equal to the adjusted basis in her interest. The judgments of the Tax Court in both cases will be reversed and the case will be remanded to the Tax Court for further proceedings consistent with this opinion. Each party shall bear its cost.
 
 STAPLETON, Circuit Judge, concurring:
 
 45
 I agree with the court's characterization of the interest in the VAY assets received by Mollie Yonadi in the divorce and with its conclusion that Mollie became responsible on the sale of that interest for the tax attributable to the appreciation in its value. However, I do not understand resolution of the issue before us to turn on whether the interest in the VAY assets received by Mollie in the divorce is more like an ownership interest than a promise to pay money in the future.[1]
 
 
 46
 The Yonadis' divorce occurred before 1984 and the controlling law here is that articulated in United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962). Accordingly, I believe the result here must turn on whether, under New Jersey law, Mollie's interest in the Yonadis' marital property immediately prior to the transfer directed by the divorce decree was like that of a co-owner. If so, the transfer to her of an interest in the VAY assets at the time of her divorce was a non-taxable division of property, she thereafter held the interest assigned to her with a carryover basis, and upon the sale of the VAY assets, she became liable for the capital gains tax on the difference between the cash she received and the carried-over share of Vincent's basis in those assets attributable to her interest. Thus, if the court is right that "Mollie's interest resulted from a division of property that can be characterized as already co-owned by her and Vincent before the divorce," Maj. Op. at 1300, they are also correct in concluding that she is responsible for the tax here at issue. Serianni v. Commissioner, 765 F.2d 1051 (11th Cir.1985) (applying Florida law); Bosch v. United States, 590 F.2d 165 (5th Cir.1979) (applying Florida law), cert. denied, 444 U.S. 1044, 100 S.Ct. 731, 62 L.Ed.2d 730 (1980); Imel v. United States, 523 F.2d 853 (10th Cir.1975) (applying Colorado law); Collins v. Commissioner, 412 F.2d 211 (10th Cir.1969) (applying Oklahoma law); McIntosh v. Commissioner, 85 T.C. 31 (1985) (applying Montana law).
 
 
 47
 On the other hand, if Mollie's interest in the marital property under New Jersey law immediately before her divorce was not like that of a co-owner, the interest she received in the VAY assets in the divorce was consideration for the release of independent marital rights she had with respect to her husband, the transfer of that interest was a taxable event for her husband, and she thereafter held that interest with a basis equal to the fair market value of that interest at the date of the transfer. E.g., United States v. Davis, 370 U.S. 65, 82 S.Ct. 1190, 8 L.Ed.2d 335 (1962); Cook v. United States, 904 F.2d 107 (1st Cir.1990). I do not understand Vincent, Mollie or the Commissioner to contend that Mollie's receipt of her interest in the VAY assets was a taxable event for Mollie. It follows that however one characterizes that interest--be it an ownership interest or a promise to pay in the future--Mollie became liable upon the sale of the VAY assets for the capital gains tax on the difference between what she received upon the sale of the VAY assets and the value of the interest she received at the time of her divorce.
 
 
 48
 This leaves the difficult issue--the nature of Mollie's interest in the Yonadis' marital property under New Jersey law at the time of her divorce. The Commissioner takes the position, and understands the Tax Court to have taken the position, "that New Jersey law [i.e., N.J.Stat.Ann. 2A:34-23] contemplates a type of co-ownership between spouses during marriage." Commissioner's Br. at 22. While I think the issue is a close one, I conclude that Mollie's interest in the marital property was sufficiently like an ownership interest to make the relevant segment of the divorce decree a division of jointly held property.
 
 
 49
 The operative provision of the New Jersey statute provides:
 
 
 50
 In all actions where a judgment of divorce or divorce from bed and board is entered the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property which was legally and beneficially acquired by them or either of them during the marriage.
 
 
 51
 N.J.Stat.Ann. Sec. 2A:34-23 (West 1993 Supp.).
 
 
 52
 All three branches of the New Jersey government have characterized this provision of New Jersey's divorce law and the related provisions regarding "equitable distribution" in a manner starkly contrary to the U.S. Supreme Court's characterization of Delaware divorce law in Davis. The Governor's Reconsideration and Recommendation Statement regarding a 1983 amendment to the statute refers to property subject to equitable distribution under the statute as "joint assets." Statement regarding Assembly, No. 1896-L.1983, c. 519, reprinted in N.J.Stat.Ann. Sec. 2A:34-23 (West 1987). A state Senate Judiciary Committee Statement implies that property which is subject to equitable distribution is "a marital asset under the partnership concept of marriage." Statement regarding Assembly, No. 1229-L.1980, c. 181, reprinted in N.J.Stat.Ann. Sec. 2A:34-23 (West 1987). The New Jersey Supreme Court expounded on its view of the effect of the statute in two 1974 opinions. In Rothman v. Rothman, 65 N.J. 219, 320 A.2d 496, 501-02 (1974), the court wrote:
 
 
 53
 [The Act] gives recognition to the essential supportive role played by the wife in the home, acknowledging that as homemaker, wife and mother she should clearly be entitled to a share of family assets accumulated during the marriage. Thus the division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership. Only if it is clearly understood that far more than economic factors are involved, will the resulting distribution be equitable within the true intent and meaning of the statute.
 
 
 54
 In Chalmers v. Chalmers, 65 N.J. 186, 320 A.2d 478, 483 (1974), the court further explained:
 
 
 55
 [T]he statutory provision for equitable distribution of property is merely the recognition that each spouse contributes something to the establishment of the marital estate [footnote omitted] even though one or the other may actually acquire the particular property. Therefore, when the parties become divorced, each spouse should receive his or her fair share of what has been accumulated during the marriage.... [A]ll that is being effected is the allocation to each party of what really belongs to him or her.
 
 
 56
 Based on this view of New Jersey law and the analysis I have set forth, I too would reverse the judgments of the Tax Court in both cases and remand for further proceedings consistent with this concurring opinion.
 
 
 
 [1]
 The court does not explain, and I do not understand, how the character of the interest received by Mollie at the time of her divorce can possibly control the issue of whether she is taxable at some point in time for the capital gains tax on pre-divorce appreciation in the VAY assets. I can conceive that, if Mollie had received cash or a cash equivalent in return for a surrender of her interest in marital property, that fact might affect the time at which she would have to realize the pre-divorce appreciation for income tax purposes. But I find it difficult to understand how the character of what she received could determine whether or not she is responsible for that appreciation assuming that she was a co-owner of the marital property